In the Matter of E. PAUL KOVACS AND COMPANY, INC., Debtor.

Bankruptcy No. 2–80–00816.

United States Bankruptcy Court, D. Connecticut.

Nov. 24, 1981.

**204**

Francis G. Pennarola, c/o Gager, Henry & Narkis, Waterbury, Conn., for debtor.

John B. Nolan, and James G. Green, Jr., c/o Day, Berry & Howard, Hartford, Conn., for The Connecticut Bank & Trust Co.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

The Connecticut Bank & Trust Company (CBT), a secured creditor, seeks an order pursuant to 11 U.S.C. § 1112(b), converting this chapter 11 case to a case under chapter 7. As cause, CBT alleged that:

> (1) By reason of incompetence and gross mismanagement, prior and since entry of the Order for Relief herein, the debtor has continued to lose substantial amounts of money; (2) The value of the estate has been and continues to be substantially diminished; (3) There is no reasonable likelihood of rehabilitation; (4) The debtor has failed to file a plan herein.

In the alternative, and for the same reasons, CBT requests the appointment of a trustee. A hearing was held on October 28, 1981, and post-hearing briefs have been received.

---

1. The schedules disclose that this figure exceeds appraisals of these same parcels by $1,212,000.00. The higher amount comes

### II.

E. Paul Kovacs & Co., Inc., the debtor, filed a voluntary chapter 11 petition on August 10, 1980. In its amended schedules, the debtor listed debts totaling $3,745,-731.41, and assets worth $7,599,953.05. Of these assets, fourteen separate parcels of real estate are claimed to have a value of $6,771,000.00,[1] thirty-eight automobiles, trucks, trailers, and other vehicles are valued at $95,600.00, and machinery and other equipment utilized by the debtor is valued at $329,200.00. For the past thirty-five years, the business of the debtor has been sand and gravel mining, the leasing of construction equipment, and the development and sale of real estate. E. Paul Kovacs and his wife, Rita D. Kovacs, are the sole owners of the corporate stock of the debtor and its only officers. Prior to the date of the filing of the chapter 11 petition, the debtor had ceased its sand and gravel mining operation. During the fifteen months the case has been pending in the bankruptcy court, the debtor's only activity is the listing of the parcels of real estate for sale. The debtor has no employees other than E. Paul Kovacs and he draws no salary. Mr. Kovacs disclosed at the hearing that he has turned over the debtor's inventory, vehicles, and equipment to other corporations owned by him and his son for use rent free. He claimed that the physical maintenance of the trucks and equipment by these corporations is adequate compensation for their use. While these assets are listed on the debtor's schedules as having a total value of $424,600.00, his estimate of their present value is around $100,000.00. Mr. Kovacs relies on his son's bookkeeper to keep track of the use of these assets. He acknowledged that cash funds of the debtor are used to pay personal property taxes in order that the trucks remain registered and available to his other corporations. He stated that he resides on property owned by the debtor but pays no rent. The debtor's accounts receivable total $306,000.00 and of

about, in part, because the debtor listed the asking prices for these parcels as their values.

this amount $106,000.00 is due from another corporation owned by Mr. Kovacs. No attempt is being made to collect this account. Mr. Kovacs admitted that he has never filed a plan and none is contemplated as he seeks to sell the debtor's real estate. Until he was advised of its impropriety during his deposition, Mr. Kovacs used the debtor's remaining cash to pay selected prepetition debts. Jerome Kovacs, a son of E. Paul Kovacs, testified that he is the real estate broker for four of the debtor's properties, and he produced a contract giving him the exclusive right to sell these properties. There is no court order approving his appointment as real estate broker for the estate. Jerome Kovacs stated that he has now secured a buyer for one property, valued by the debtor at $220,000.00 in its schedules. The proposed sale price for this property is $140,000.00.

### III.

■ CBT's application to convert this case to a case under chapter 7 is based on 11 U.S.C. § 1112(b)(1), (2), and (3), which read in pertinent part as follows:

> [O]n request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> > (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
> >
> > (2) inability to effectuate a plan;
> >
> > (3) unreasonable delay by the debtor that is prejudicial to creditors ....

A number of recent decisions dealing with § 1112(b) applications have pointed out that a bankruptcy court is to consider all factors when it determines whether or not to convert a case and is not limited to the grounds set out in § 1112(b). *In re Larmar Estates, Inc.,* 6 B.R. 933 (Bkrtcy., E.D. N.Y.1980); *In re Tolco Properties, Inc.,* 6 B.R. 482, 6 B.C.D. 913 (Bkrtcy., E.D.Va. 1980); *In re L. S. Good & Co.,* 8 B.R. 315, 7 B.C.D. 103 (Bkrtcy., N.D.W.Va.1980); *In re*

*Kors, Inc.,* 13 B.R. 676 (Bkrtcy., D.Vt.1981). I believe that where, as here, a debtor in possession is oblivious to the fiduciary responsibilities imposed upon it in dealing with property of the estate, conversion will normally be justified. Under 11 U.S.C. § 1107(a), "a debtor in possession ... shall perform all the functions and duties ... of a trustee serving in a case under this chapter." The Supreme Court has indicated that "the debtor, though left in possession by the judge, does not operate [the business] as it did before the filing of the petition, unfettered and without restraint." *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 125, 60 S.Ct. 1, 12, 84 L.Ed. 110 (1939). Rather, "[a] debtor in possession holds its powers in trust for the benefit of creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit." *In re Martin Custom Made Tires Corp.,* 108 F.2d 172, 173 (2nd Cir. 1939).

■ While the schedules in this case indicate the unusual circumstance of a chapter 11 debtor claiming assets double the amount of its debts, I believe that the interests of creditors may be in jeopardy in view of the manner in which E. Paul Kovacs is conducting the debtor's functions and duties. The interests of the debtor's creditors take precedence over the interests of Mr. Kovacs' other corporations. The record of this proceeding raises serious questions as to the ability and motivation of the debtor in possession to proceed promptly with an efficient and responsible liquidation. In a chapter 7 case, a disinterested trustee's sole commitment will be "to the promotion of parity among interested parties, rather than to self interest." *In re Maplewood Poultry Co.,* 2 B.R. 545, 549 (Bkrtcy., D.Maine 1980). *See also In re L. S. Good & Co., supra,* 8 B.R. at 318, 7 B.C.D. at 105.

Under § 1112(b)(1), diminution of the estate as well as absence of a reasonable likelihood of rehabilitation are required as cause for conversion. There is no question this estate is being diminished by the use of its assets by the other Kovacs family corpo-

rations. And it has been held that the rehabilitation referred to in § 1112(b)(1) means more than liquidation under chapter 11, even though liquidation may constitute a permissible plan of reorganization under 11 U.S.C. § 1123(b)(4). *In re Tolco Properties, Inc., supra,* 6 B.R. at 488, 6 B.C.D. at 917.

> 'Rehabilitate' has been defined to mean 'to put back in good condition; re-establish on a firm, sound basis.' Rehabilitation, as used in section 1112(b)(1), does not mean the same thing as reorganization, as such term is used in chapter 11. Since a debtor can be liquidated in chapter 11, the ability to confirm a plan of reorganization is considerably different than reaching a firm, sound financial base.

5 *Collier on Bankruptcy* 1112–15, ¶ 1112.-03[2][d][i] (15th Ed. 1979) (footnotes omitted). I find that there is a diminution of the estate and an absence of a reasonable likelihood of rehabilitation in this case.

There was testimony during the hearing that CBT's debt now exceeds $2,000,000.00. The debtor claims that CBT is fully secured and it is seeking by this conversion to force sales to the detriment of the debtor and its unsecured creditors. However, under chapter 7 there can be orderly liquidation with negotiated sales as well as an administration of this estate more in keeping with sound fiduciary principles. The debtor sought to take advantage of the provisions of the bankruptcy code by filing its voluntary chapter 11 petition with liquidation of its assets as the goal under the umbrella of the court. Both the purpose of the debtor and the interests of its creditors are best served by converting this case to a case under chapter 7, and it is

SO ORDERED.