**In re TELEMARK MANAGEMENT COMPANY, INC., The Telemark Company, Inc., Telemark Land Company, Inc., Historyland, Incorporated, Thaw, Inc., Wisconsin Corporations, d/b/a Telemark Enterprises, Debtors.**

**Bankruptcy Nos. EF11–81–00747 to EF11–81–00751.**

United States Bankruptcy Court, W.D. Wisconsin.

May 17, 1984.

James C. Ratzel, Madison, Wis., for I.R.S.

Michael D. Schwartz, Stern, Levine, Schwartz, Lifson, Creighton & Bunin, P.A., James P. Miley, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minn., for debtors.

James D. Harnett, Madison, Wis., for Wis. Dept. of Revenue.

Eugene J. LaFave of Adler & LaFave, Eau Claire, Wis., for Condominium Owners (Lodge Owners).

Jeffrey W. Guettinger of Herrick, Hart, Duchemin, Danielson & Guettinger, S.C., Eau Claire, Wis., for Peoples Nat. Bank.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONVERTING EACH CASE TO A CHAPTER VII

WILLIAM H. FRAWLEY, Bankruptcy Judge.

The United States of America Internal Revenue Service, (I.R.S.), represented by James C. Ratzel of the United States Attorney's Office for the Western District of Wisconsin, having filed Motions to Dismiss or Convert the above captioned matters; and the above named Debtors, represented by Michael D. Schwartz of Stern, Levine, Schwartz, Lifson, Creighton & Bunin, P.A., and by James P. Miley of Larkin, Hoffman, Daly & Lindgren, Ltd., having opposed said motions; and James D. Harnett, attorney for the Wisconsin Department of Revenue,

Eugene J. LaFave of Adler & LaFave, attorney for the Condominium Owners (Lodge Owners), and Jeffrey W. Guettinger of Herrick, Hart, Duchemin, Danielson & Guettinger, S.C., attorney for Peoples National Bank, having observed in the courtroom; and hearings having been held; and the Court having filed an interlocutory decision on March 28, 1984, requesting further briefing; and briefs having been filed pursuant to said order by the parties, and by Mr. Harnett, Mr. LaFave (by William Adler), Mr. Guettinger and, on behalf of the Creditors' Committee, Mr. Arthur L. Eberlein; and the Court, having heard the testimony of witnesses and the oral argument of counsel and having duly considered the exhibits and memoranda filed herein, and after examination of the entire record and proceedings and being fully advised in the premises, FINDS THAT: [1]

1. The Debtors in the above captioned matters filed petitions for relief under Chapter 11 of the Bankruptcy Code on April 30, 1981 (on May 14, 1981, the cases were consolidated for joint administration).

2. The Debtors Amended Consolidated Plan of Reorganization was confirmed by this Court on December 17, 1982.

3. The confirmed plan provides for payments to approximately 650 creditors divided into 36 classes of claims and interests.

4. The confirmed plan provides, in pertinent part:

### VII.

### ADDITIONAL PROVISIONS

E. *Retention of Jurisdiction.*

The Bankruptcy Court shall retain jurisdiction over Telemark Enterprises and its operations and assets subsequent to the time of confirmation of the Plan until such time as the payments called for under the Plan have been made for the purpose of allowing claims and hearing objections, if any, thereto, for conducting

---

**1.** The findings of this Court's March 28, 1984, interlocutory Order are herein edited and repeated as Paragraphs 1–20.

adversary proceedings with respect to matters related herein, for determining and resolving any defaults or similar matters under the Plan, for approving administrative expenses incurred after confirmation of the Plan, and for such other and further purposes as may be necessary or appropriate to carry out the provisions of the Plan.

.　　.　　.　　.　　.

## I. *Default.*

The following shall be events of default in this Amended Plan of Reorganization:

(a) An order for relief concerning the Debtors is entered by the Bankruptcy Court.

(b) Debtors execute and cause to be delivered an assignment for the benefit of creditors.

(c) A receiver is appointed of all or substantially all of Debtors' property.

(d) Debtors fail to make any payment as provided in this Amended Plan of Reorganization except such payment or payments as may be agreed to by the creditor or creditors entitled thereto, or fail to pay real estate taxes, sales taxes, withholding taxes, employment taxes, or other taxes.

(e) Debtors fail to perform or observe other terms, covenants and undertakings of this Plan.

In the event the Creditors' Committee or People's National Bank of Hayward declares Debtors to be in default by reason of events of default as described in subparagraphs (c), (d) or (e) in the immediately preceding paragraph, written notice thereof shall be given to the Debtors, and Debtors shall have sixty (60) days from the date of receipt of such written notice to cure said default, and if said default is so cured and all payments are current, then this Amended Plan of Reorganization shall continue in full force and effect.

In the event of a default which has not been cured within said sixty (60) day period, the Creditors' Committee or the People's National Bank of Hayward shall have the right upon a minimum of fifteen (15) days' written notice to apply to the Bankruptcy Court for relief from the automatic stay provisions of the Bankruptcy Code (11 U.S.C. § 362). The Debtors hereby agree that the only defenses which may be raised to the application for relief from stay are that a default has not occurred or that the default had been cured or waived prior to the filing of the Application and hearing by the Bankruptcy Court.

5. On November 1, 1983, this Court held a hearing on the I.R.S.'s first Motion to Convert or Dismiss. At said hearing, the Debtors argued that they had not received 60 days notice of default as required by the confirmed plan.[2]

6. On November 9, 1983, I.R.S. District Director L.M. Phillips wrote to the Debtors' president, Anthony Wise, and to the attorneys representing the Debtors:

Pursuant to Section VII, paragraph 1, subparagraph (d) of the Amended Consolidated Plan of Reorganization this letter shall constitute notice and declaration of default by the debtors with respect to the Confirmed plan. The incidents of default are as follows:

1. Failure to make the $3,500.00 monthly payments required by Section IV of the plan to the Class L creditor, Internal Revenue Service, for the months of March 1983 through November 1983;

2. Failure to pay the administrative tax claim of $1,126.74 plus accruals of $176.26 to November 4, 1983, for a total of $1,303.00, as required by Section III of the plan; and

3. Failure to pay post-confirmation employment taxes, interest and penalties totaling $277,451.26 due and owing for the first, second and third quarters

---

**2.** The Court did not rule on the first motions in that the I.R.S. elected to give the 60-day notice referred to in Finding #6.

1983, with interest computed to November 4, 1983. The detail of the amounts due is set forth on the attached Schedule A.

Please be advised that, in the event of a failure to cure the above defaults within sixty (60) days as set forth in the plan, the Internal Revenue Service will proceed before the Bankruptcy Court for appropriate relief..

7. Debtors' Memorandum of Law in Opposition of the United States of America's Motion to Dismiss or Convert the Chapter 11 Bankruptcy Proceedings (filed December 23, 1983) provides, on page 3 (emphasis added):

On November 14, 1983, the Debtor and the undersigned attorney on behalf of the Debtor received by certified mail a notice from the United States of America, Internal Revenue Service specifying in compliance with Section VII, paragraph 1 subparagraph (d) of the Amended Consolidated Plan of Reorganization that a default had occurred and specifically delineating the default therein. The letter was *in compliance* with that provision of the Amended Consolidated Plan of Reorganization and allows the Telemark organization until January 14, 1983 to cure its default provisions or the United States of America, Internal Revenue Service *has the right* to file a motion to dismiss or convert the Consolidated Chapter 11 Bankruptcy proceedings. The notice to dismiss or convert and/or relief from the automatic stay must be given by fifteen (15) days written notice.

8. On February 6, 1984, the I.R.S. filed its second Motion to Dismiss or Convert under 11 U.S.C. sec. 1112(b)(1976). In supporting documents, the I.R.S. alleged that the Debtors had failed to make plan payments [3] and that said failure was cause to convert or dismiss under sec. 1112(b)(7) &

(8)—the supporting documents did not allege that the Debtors had failed to pay post-confirmation taxes.

9. At the hearing on March 14, 1984, in open Court, Debtors requested of the I.R.S. a 30 day extension to cure the plan payment defaults in the sum of approximately $50,354.87, being 14 ordinary payments of $3,500 and an administrative fee of $1,354.87. This request was not granted by the I.R.S.

10. At said second motion hearing, evidence was presented regarding unpaid plan payments and unpaid post-confirmation taxes and regarding the ability of the Debtors to pay same in the future. [4]

11. The only delinquent payments under the plan, it was testified, were the above I.R.S. payments and Court approved extension payments to the State of Wisconsin.

12. Post-confirmation taxes became due in 1983 in the sum of approximately $507,000, of which the approximate sum of $149,000 was paid, leaving an unpaid balance of approximately $358,000.

13. There is no evidence that the I.R.S. has requested Creditor Committee action in regard to any of said delinquencies or that such a request was unreasonably denied. *Cf.* 19 Am.Jur.2d *Corporations* sec. 528 (1965) (derivative action).

14. The first quarter withholding taxes for 1984 in the approximate sum of $160,000 were due April 1, 1984, of which $23,879 has been paid, and the Debtors are unable to pay the balance at this time.

15. Said Debtors have not made a profit in the past nine years.

16. The Debtors' daily payroll varies from $6,000 to $24,000 per day.

17. The managing president of the Debtors, a 99% stock owner, believes the

---

**3.** There was reference at the March 14, 1984 hearing that Debtors were operating under "their own 60 day" rule rather than the clear intention of the plan that payments were payable when due and creditors were not expected to get out 60 day notice for every payment due them.

**4.** The Debtors have acted as they please—paying those they felt like (testimony of Mr. Vortans). The Debtors issued "N.S.F. checks" for "due payments" as late as March 20, 1984 (after the hearing herein).

Debtors are beginning to see daylight and can work out of bankruptcy "like Chrysler".

18. The Debtors' new director of sales and marketing, Denise Koalska, testified that her new marketing plan has increased sales for January and February, 1984, with bookings of $669,000 compared with $250,000 for the same period in 1983.

19. The Bertelson Company of Eau Claire has prepared a new planning and control system for the Debtors, now in operation, which was testified to by Mr. J.T. O'Malley, C.P.A., of said firm.

20. Representatives of the Telemark employees and shop owners were present at said hearing, and the Court noted that they were present to oppose said motion and to support said extension of time.

The Court makes the following additional Findings:

21. The confirmed plan provision for notice is as follows:

L. *Notice.*

All notices required to be given pursuant to this Amended Plan of Reorganization shall be mailed, by certified or registered mail, addressed as follows:

Anthony Wise
Telemark Lodge
Cable, Wisconsin 54821
Michael D. Schwartz, Esq.
STERN, LEVINE, SCHWARTZ, LIFSON & CREIGHTON, P.A.
5005 Cedar Lake Road
Minneapolis, Minnesota 55416
James P. Miley
LARKIN, HOFFMAN, DALY & LINDGREN, Ltd.
1500 Northwestern Financial Center
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431

As to the Creditors' Committee:
Arthur Eberlein, Esq.

. 606 Jackson Street
P.O. Box 1104
Wausau, Wisconsin 54401
David Scholfield
Manson Insurance
First American Center
Wausau, Wisconsin 54401

As to the People's National Bank of Hayward:

Quentin Johnson
People's National Bank of Hayward
Hayward, Wisconsin 54843
James H. Levy, Esq.
1700 First National Bank Building
St. Paul, Minnesota 55101
Jeffrey W. Guettinger
116 West Grand Avenue
P.O. Box 167
Eau Claire, Wisconsin 54702

22. Return receipts were not required—merely proof of mailing.

23. The exhibits show the I.R.S. complied with the requirement for *mailing* notices of default.

24. Debtors' briefs admitted receipt by Debtors of notices. Paragraph 7 *supra.*

25. At the hearing on March 14, 1984, the Debtors requested 30 days to pay up the $50,000 plan defaults. The I.R.S. refused the request. Paragraph 9 *supra.* It is now over 54 days later and Debtors have paid nothing on *either* plan or post-plan taxes.

26. The brief of Mr. Harnett for the State of Wisconsin joins with the I.R.S. for conversion to Chapter 7 and shows Debtors in default to the State of Wisconsin as follows:

Based upon information on file with the Department, the debtor is delinquent on the following post-plan confirmation taxes owing to the Department:

| Entity | Period | Type of Tax | Amount * |
|---|---|---|---|
| Telemark Man. Co., Inc. | Mar. 1982 | Sales & Use | $ 12,659.50 ** |
| Telemark Man. Co., Inc. | Feb. 1983 | Sales & Use | $ 31,658.39 |
| Telemark Man. Co., Inc. | Mar. 1983 | Sales & Use | $ 12,321.58 |
| Telemark Man. Co., Inc. | Apr. 1983 | Sales & Use | $ 4,928.21 |

| Entity | Period | Type of Tax | Amount * |
|---|---|---|---|
| Telemark Man. Co., Inc. | May 1983 | Sales & Use | $ 7,546.83 |
| Telemark Man. Co., Inc. | Oct. 1983 | Sales & Use | $ 9,348.43 |
| Telemark Man. Co., Inc. | Dec. 1983 | Sales & Use | $ 15,818.13 |
| Telemark Man. Co., Inc. | Jan. 1984 | Sales & Use | $ 20,088.59 |
| Telemark Man. Co., Inc. | Feb. 1984 | Sales & Use | $ 23,478.90 |
| Telemark Co., Inc. | Feb. 1983 | Sales & Use | $ 15,362.32 |
| Telemark Co., Inc. | Mar. 1983 | Sales & Use | $ 3,025.58 |
| Telemark Co., Inc. | Oct. 1983 | Sales & Use | $ 1,233.85 |
| Telemark Co., Inc. | Dec. 1983 | Sales & Use | $ 7,951.62 |
| Telemark Co., Inc. | Jan. 1984 | Sales & Use | $ 9,337.00 |
| Telemark Co., Inc. | Feb. 1984 | Sales & Use | $ 9,806.86 |
| Telemark Land Co., Inc. | Feb. 1983 | Sales & Use | $ 3,725.43 |
| Telemark Land Co., Inc. | Oct. 1983 | Sales & Use | $ 7,205.51 |
| Telemark Land Co., Inc. | Dec. 1983 | Sales & Use | $ 1,221.67 |
| Telemark Land Co., Inc. | Jan. 1984 | Sales & Use | $ 1,500.59 |
| Telemark Land Co., Inc. | Feb. 1984 | Sales & Use | $ 3,012.30 |
| Historyland, Inc. | May 1983 | Sales & Use | $ 1,441.66 |

Sub-Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $202,672.95

| Pre-petition tax claims due under the amended plan, and unpaid to date | | | |
|---|---|---|---|
| | Jan. 1984 | | $ 2,000.00 |
| | Feb. 1984 | | $ 2,000.00 |
| | Mar. 1984 | | $ 2,000.00 |

Sub-Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 6,000.00

Total due the Department on a post-plan confirmation basis                $208,672.95

\* With interest computed to April 28, 1984.

\*\* An administrative expense, due under the plan on March 1, 1983.

---

27. The brief of Adler & LaFave for Telemark Lodge Owners also joins the I.R.S. for conversion to Chapter 7 and shows Debtors in default in the sum of $19,000.00 by an N.S.F. check dated March 20, 1984 (less than one week after the March 14 hearing).

28. The brief of Mr. Guettinger for Peoples National Bank of Hayward joins the I.R.S. for conversion to Chapter 7 and shows default in the sum of $22,262.64 (for March, April and May, 1984, payments of $7,420.88 each).

29. The Creditors' Committee brief opposes the conversion.

## DISCUSSION

30. *Jurisdiction.* The plan, by its terms, limits creditor access to this Court for the purpose of lifting the 11 U.S.C. sec. 362 automatic stay. However, after considering the arguments of counsel, this Court concludes that:

(1) The plan does not keep alive the automatic stay.

(2) The plan does not require a creditor to comply with the plan default provisions to make an 11 U.S.C. sec. 1112(b) motion to convert or dismiss.

31. However, even if the I.R.S. was required to seek action of the Creditors' Committee or of Peoples National Bank to proceed, such a requirement has been waived by the Peoples National Bank's ratification of the motion at bar. *See* Paragraph 28.

32. In addition, given the procedural and substantive history of this proceeding, this Court would exercise *sua sponte* jurisdiction, if necessary, to reach the merits of the motion at bar. *See In re Coram Graphic Arts,* 11 B.R. 641 (Bankr.E.D.N.Y. 1981); *In re East Town Properties,* 83–C–911 (E.D.Wis. Jan. 24, 1984) (affirming *sua sponte* conversion discussed in *In re East Town Properties,* 31 B.R. 507 (Bankr.E.D. Wis.1983)). *See generally In re Madison Hotel Associates,* 29 B.R. 1003, 1010 (W.D.

Wis.1983) (traditional equitable power to dismiss).

33. Accordingly, the notice requirements of the plan default provisions need not be complied with.

34. Given actual notice to the Debtors' attorneys, Paragraph 7 *supra*, there has been "such notice as is appropriate in the particular circumstances" as provided in 11 U.S.C. sec. 102(1)(A).

35. This Court has jurisdiction over post-confirmation taxes, *see Allied Technology, Inc. v. R.B. Brunneman & Sons*, 25 B.R. 484, 499 (Bankr.S.D.Ohio 1982), however, post-confirmation taxes are not being considered at this time because of the material and substantial defaults in plan payments.

36. *Conversion or Dismissal.* Section 1112 of the Bankruptcy Code provides for conversion or dismissal, as follows:

> (b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
>> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>>
>> (2) inability to effectuate a plan;
>>
>> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>>
>> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
>>
>> (5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;
>>
>> (6) revocation of an order of confirmation under section 1155 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title.

>> (7) inability to effectuate substantial consummation of a confirmed plan [*see* sec. 1101(2) ];
>>
>> (8) material default by the debtor with respect to a confirmed plan; and
>>
>> (9) termination of a plan by reason of the occurrence of a condition specified in the plan.

37. All the evidence is most convincing that the Debtors cannot successfully comply with the plan.

38. The time from the December 1982 confirmation of the plan to date shows an inability of the Debtors to break even—in fact, they have run behind in taxes over $500,000. 11 U.S.C. sec. 1112(b)(7).

39. The evidence shows a continuing loss to and diminution of the estate. 11 U.S.C. sec. 1112(b)(1).

40. The evidence and defaults admitted and alleged show an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. sec. 1112(b)(1).

41. The evidence clearly establishes the inability of the Debtors to effectuate a substantial consummation of a confirmed plan. 11 U.S.C. sec. 1112(b)(7).

42. The Debtors' defaults under the plan are material. 11 U.S.C. sec. 1112(b)(8).

43. In addition, a debtor-in-possession's breach of fiduciary duty to bankruptcy estate creditors is cause for conversion or dismissal. *In re E. Paul Kovacs and Co., Inc.*, 16 B.R. 203, 205 (Bankr.D.Conn.1981). And the Debtors appear to have breached their fiduciary duty to the I.R.S. *See* 26 U.S.C. sec. 7501 (withholding tax to be held in trust).

44. "Bankruptcy is perceived as a haven for wistfulness and the optimist's valhalla where the atmosphere is conducive to fantasy and miraculous dreams of the phoenix rising from the ruins." *In re Maxim Industries, Inc.*, 22 B.R. 611, 613 (Bankr.D.Mass.1982). However, as Judge King remarked:

> "Although the Court understands the reluctance of the president of the corporation to surrender a business which has existed

for twenty-five (25) years, *reality must be confronted."* *In re Tracey Service Co., Inc.,* 17 B.R. 405, 410 (Bankr.E.D.Penn. 1982) (emphasis added).

### CONCLUSION OF LAW

That an order be entered converting each of said cases to a Chapter 7 proceeding effective immediately.

### ORDER

IT IS ORDERED THAT each of said above named cases be, and they hereby are, converted to Chapter 7 proceedings effective immediately.

IT IS FURTHER ORDERED THAT Lawrence J. Kaiser be, and he hereby is, appointed interim trustee in each case with full powers under the Code to operate said businesses as provided under 11 U.S.C. sec. 704(7).