**In re NARON & WAGNER, CHARTERED, Debtor.**

**Bankruptcy No. 88–5–0717D.**

United States Bankruptcy Court, D. Maryland.

July 26, 1988.

**86**

Earl F. Leitess, Joyce A. Kuhns, Marlene C. Kruppa, Weinberg & Green, Baltimore, Md., for debtor.

## MEMORANDUM OPINION

E. STEPHEN DERBY, Bankruptcy Judge.

In this Chapter 11 case the Debtor has sought to sell all of its operating assets before it has had a plan of reorganization confirmed, and in fact before it has even filed a plan. The Debtor has advised the Court that it intends to file a plan of liquidation within the exclusive period provided to the Debtor by 11 U.S.C. Section 1121.

The Debtor, Naron & Wagner, Chartered, is a local accounting firm. Its principal operating assets were an accounting practice, associated office leases and equipment, and a wholly owned subsidiary known as Business Computer Group ("BCG"), which is engaged in the business of distributing computer hardware and software and providing various related services.

This Court previously approved the sale of Debtor's accounting practice and related assets, including the amendment, assumption and assignment of certain leases, on

motion and after notice to all creditors and parties in interest pursuant to 11 U.S.C. Sections 363(b) (1) and 365 and Bankruptcy Rules 6004 and 6006. The Court concluded, based on the evidence proffered without objection at the hearing, that there were "good business reason[s]" for granting Debtor's motions. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2 Cir.1983). The Debtor was unable to continue its accounting practice profitably or with adequate personnel; the accounting practice was an intangible asset dependent on client good will and, if not timely sold, would quickly lose all of its realizable value for the bankruptcy estate because clients whom Debtor could not service would retain new accountants; preservation of the accounting practice by its sale to another accounting firm would facilitate Debtor's collection of over $600,000 of accounts receivable which it retained, because clients would continue to receive uninterrupted accounting services; and the amendment, assumption and assignment of leases which were an integral part of the sale transaction would avoid or minimize additional claims against the bankruptcy estate.

Presently before the Court is Debtor's motion for approval of the private sale of all the assets of BCG free and clear of liens, encumbrances, claims and interests. BCG is the Debtor's last operating asset. The purchaser is ProVAR, Inc., a Maryland corporation. The principals of ProVAR are the current management of BCG, namely, the president and a vice president. There is no creditors' committee in this case, no objections have been filed, and the United States Trustee has not taken any position, although the Section 341 first meeting of creditors has been held.

This matter raises several issues. First, under what circumstances, if any, should the Court approve a Chapter 11 debtor's sale of substantially all its operating assets prior to confirmation of a plan of reorganization. Second, what protections must be afforded to creditors and other parties in interest before such a sale may be approved by the Court. Third, have the necessary protections been afforded here to creditors and other parties in interest. Finally, do circumstances exist in this case which justify approval of the sale of Debtor's last major operating asset. It is appropriate for the Court to consider these issues because the Court's approval has been sought by the Debtor and because sale of all assets of BCG, a non-debtor but wholly-owned subsidiary corporation of the Debtor, will directly govern the realizable value of Debtor's 100% ownership interest. *Cf. In Re Equity Funding Corporation of America*, 492 F.2d 793 (9 Cir.1974), *cert. denied, Herman Invest. Co. v. Loeffler*, 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974). Further, Debtor's approval of this sale appears required under Maryland law because Debtor is the sole shareholder of BCG, and substantially all of the assets of BCG are being sold. Md.Corps. & Ass'ns Code Ann. § 3–105 (1985 Repl. Vol.).

■ As to the first question, the Court concludes that a Chapter 11 debtor may in certain circumstances sell all or substantially all of its assets, or a substantial asset, pursuant to 11 U.S.C. Section 363(b) prior to confirmation of a plan of reorganization. Such a sale may even be made, as here, prior to filing a plan of reorganization. However, before such a sale can be approved, the court must "... expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application." *In re Lionel Corp., supra,* 722 F.2d at 1071. In other words, the court should not approve such a sale unless it is able, based on the evidence, "... to articulate sound business justifications for [its] decisions." *Id.* at 1066. In *Lionel* the Court of Appeals reversed approval of a Chapter 11 debtor's preconfirmation sale of an 82% common stock interest in a profitable subsidiary because the objector's evidence demonstrated there was not a good business reason for the sale. The subsidiary was less subject than other companies to wide market fluctuations; there was no reason why those interested in purchasing the stock would not be just as interested in six months; and the stock was being sold only because the unsecured creditors' committee insisted, although

debtor preferred to retain its ownership interest.

■ This court adopts the rationale of the *Lionel* case. It will not follow *White Motor Credit Corporation*, 14 B.R. 584 (Bkrtcy.N.D. Ohio 1981). There is no requirement that only an emergency will permit a Chapter 11 debtor's preconfirmation use of Section 363(b), but a Chapter 11 debtor may not use Section 363(b) without establishing a good business reason for such use. *See also Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6 Cir.1986). The Chapter 11 plan confirmation process provides numerous protections to parties in interest, and a debtor should not be allowed to "... use § 363(b) to sidestep the protection creditors have when it comes time to confirm a plan of reorganization," or inappropriately to establish the terms of a plan *sub rosa* through use of Section 363(b). *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1227 (5 Cir.1986). *See also In re Braniff Airways, Inc.*, 700 F.2d 935 (5 Cir.1983). The sale proposed here is not a *sub rosa* plan because it seeks only to liquidate assets, and the sale will not restructure rights of creditors, as in the *Braniff* case, *supra*.

■ As to the second question of what protections must be afforded creditors and other parties in interest when a Section 363(b) preconfirmation sale of important assets is proposed, this court concludes that a Chapter 11 debtor which proposes to sell all or substantially all its assets pursuant to Section 363(b), prior to confirmation or filing its plan, must provide notice to all parties in interest. This notice should be sufficient to inform all interested parties of the anticipated impact of the sale on debtor's business and/or anticipated plan. For example, in the *instant case the notice should contain enough information to alert interested parties that this is their last chance to be heard prior to the Debtor filing a plan to distribute the proceeds of liquidation in accordance with the priority of each creditor.*

Basic to the structure of the Bankruptcy Code is that debtors are provided a fresh start through liquidation, adjustment of debts, or reorganization, while creditors and other parties in interest are protected by the requirement they receive notice and an opportunity to be heard on matters which affect their positions. The concept of "after notice and a hearing" is defined flexibly in 11 U.S.C. Section 102(1)(A) as "... such notice as is appropriate in the particular circumstances,...." The requirement of "after notice and a hearing" is the predicate of many actions authorized under the Bankruptcy Code, such as the sale of property of the estate outside the ordinary course of business under 11 U.S. C. Section 363(b)(1). If notice which is appropriate under the circumstances to allow creditors and other parties in interest to protect their rights is not provided, the structural tension inherent in the Bankruptcy Code which balances the rights of all parties is subverted.

The Court has a responsibility to review this proposed sale carefully because of the circumstances of the sale. The sale is private; it is to a corporation controlled by insiders of the seller, which is Debtor's subsidiary; the sale will liquidate a substantial asset of Debtor; and the sale is a preconfirmation sale controlled by the Debtor in Chapter 11, rather than a sale within a Chapter 7 case where a disinterested trustee controls the proposed liquidation of assets. The Chapter 11 Debtor is here liquidating all or substantially all its assets without providing creditors and equity holders with adequate information through a written disclosure statement approved by the court after notice and a hearing pursuant to 11 U.S.C. Section 1125. Creditors are not offered an opportunity to protect their interests through the Chapter 11 voting and confirmation process.

It is important that the court be satisfied with the notice provided by the debtor-in-possession, even where no party in interest has objected to the proposed sale of estate property outside the ordinary course of business. The absence of objections is without meaning if notice adequate to invite objections by interests adversely affected was not provided. Assuming adequate notice, the process is more likely to

be self-policing, with parties in interest objecting when they believe their rights have been violated. When there has not been an objection, the court should review the adequacy of the notice to ensure that inadequate notice was not the cause of the failure of a party in interest to object.

■ The primary function of Chapter 11 is for the reorganization of a business, although liquidation plans are authorized. 11 U.S.C. § 1123(b)(4). Consequently, if the purpose of a debtor in proposing the sale of assets within a Chapter 11 proceeding is to dispose of all or a substantial portion of debtor's business and thus prevent reorganization, parties in interest are entitled to notice of that result from the proposed action so they may know to protect any interests they may have in the continuation of the business. If parties in interest are provided copies of a liquidation plan under Chapter 11 with the right to object to confirmation, or if they receive a disclosure statement describing a liquidation because votes are being solicited from an impaired class (11 U.S.C. § 1125(b)), then this protection is provided. By contrast, under Chapter 7 such additional disclosure might not be expected because an express purpose and function of Chapter 7 is liquidation of the bankruptcy estate, and such liquidation is sponsored by a disinterested trustee.

■ For a Chapter 11 preconfirmation sale of all or substantially all of a debtor's assets, appropriate notice should be a functional substitute for the adequate information which would be contained in a disclosure statement concerning the proposed transaction. *See In re Santec Corp.*, 49 B.R. 59, 60 (Bkrtcy.D.N.H.1985) and *In re Bertholet Enterprises, Inc.*, 66 B.R. 566, 567 (Bkrtcy.D.N.H.1986). Where a plan has not been circulated or even filed, the court must assume a class will be impaired and a disclosure statement will be required for a Chapter 11 plan. *Cf. In re Forrest Hills Associates, Ltd.*, 18 B.R. 104 (Bkrtcy. D.Del.1982); *In re Transload and Transport, Inc.*, 61 B.R. 379 (Bkrtcy.M.D.La. 1986). *See In re Jeppson*, 66 B.R. 269 (Bkrtcy.D.Utah 1986). A somewhat different rationale is set forth in *In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781 (Bkrtcy. W.D.Pa.1988), where an undersecured lienholder was denied preconfirmation distribution of the proceeds of sale of its collateral in a liquidating Chapter 11 because, in part, the disclosure statement requirement should not be short-circuited. In order for notice to provide appropriate, and thus adequate, information in the instant situation, the notice should: 1) place all parties in interest on notice that Debtor is liquidating its business under Chapter 11; 2) disclose accurately the full terms of the sale, including the identity of the purchaser; 3) explain the effect of the sale as terminating Debtor's ability to continue in business, and 4) explain why the proposed price is reasonable and why the sale before confirmation is in the best interests of the estate.

The Court earlier refused to authorize this proposed sale of the assets of BCG without a second notice of the proposed sale to all creditors which adequately advised them of what was happening. The original notice failed to disclose that the proposed sale was of the last major operating asset of Debtor, that Debtor was liquidating all of its assets, and that a portion of the described consideration to be paid by the purchaser would not be passed through to the Debtor but would be used to satisfy a claim against BCG by Debtor's joint venturer.

Consequently, in considering the third question whether the required protections have now been afforded by Debtor to parties in interest, the issue is whether Debtor's second notice provided information which was appropriate under the circumstances. The Court concludes the second notice is minimally adequate. The second, Supplemental Notice, discloses that the sale is of substantially all of the assets of BCG, that BCG is a wholly-owned subsidiary of Debtor, and that BCG is one of Debtor's last remaining major assets. Further, the second notice corrects and describes in greater detail the amount and manner of payment of the purchase price and resolution of the joint venturer's claim. The fact of Debtor's liquidation is reason-

ably apparent in the context of this case from this notice and prior notices sent by Debtor to all interested parties.

■ As to the final issue, the Court concludes that the Debtor has proffered and provided sufficient evidence and reasons that the proposed Section 363(b) sale of its last operating asset prior to confirmation is supported by "good business reason[s]". *Lionel, supra,* at 1071.

First, BCG is not currently a viable business. The Debtor underwrote BCG's operations to the extent of $750,000 in the two years BCG has operated, and Debtor has been unable to provide additional working capital to BCG after filing its bankruptcy petition. BCG is currently only able to service its trade debt, and it cannot service its financial obligations to Debtor.

Second, failure to close the sale quickly will likely result in a halt of BCG's continuous operations. If BCG cannot be sold as a going concern, there will be a substantial decrease in its value to the Debtor's estate.

Third, the net purchase price to be realized by Debtor after the purchaser's assumption of certain liabilities of BCG is $390,713.08—$43,000 in cash at closing and the balance in notes at 9% interest. This price substantially exceeds the $246,721.00 estimated liquidation value of BCG's assets.

Fourth, BCG's key personnel have suggested they will seek other employment if the future viability of the business and their jobs is not promptly resolved by the proposed sale.

Finally, Debtor has proffered that the proceeds from the proposed sale, when combined with other assets being liquidated, will be sufficient to pay non-insider creditors in full, so that only insider creditors are likely to be at risk of being adversely affected if the price was insufficient.

For these reasons, the Court believes it is in the best interests of all parties in interest to authorize this sale, and an order has been separately entered.