**In re Kenneth G. SCHIPPER, Debtor.**

**FULTON STATE BANK, Plaintiff,**

v.

**George SCHIPPER, Jennie Schipper, Kenneth G. Schipper, individually and as Debtor-in-Possession, John Dornfeld, and Stephen R. Burns, Defendants.**

Bankruptcy No. 86 B 20967.
Adv. No. 88 A 3130.

United States Bankruptcy Court,
N.D. Illinois, W.D.

May 17, 1989.

Thomas J. Potter, Morrison, Ill., for the Bank.

Bernard J. Natale, Rockford, Ill., for debtor.

Stephen G. Balsley, Rockford, Ill., for the Parents.

John S. Callas, Eoxk Island, Ill., for John Dornfeld.

Stephen R. Burns, pro se.

MEMORANDUM OPINION
AND ORDER

RICHARD N. DeGUNTHER,
Bankruptcy Judge.

This matter comes before the Court on a Complaint for Equitable Relief and for

Turnover of Funds, filed by Fulton State Bank (Bank). The Bank sought the recovery of certain real estate which was transferred by the Debtor, Kenneth G. Schipper, to the Debtor's parents, George and Jennie Schipper (Parents), or a portion of the proceeds received in the subsequent transfer by the Parents. The Bank is represented by Attorney Thomas J. Potter. The Debtor is represented by Attorney Bernard J. Natale. The Parents are represented by Attorney Stephen G. Balsley. John Dornfeld (Dornfeld) is represented by Attorney John S. Callas. Stephen R. Burns (Burns) represents himself.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

The Debtor owned approximately 181 acres, including two tracts of land and 19 separate lots, which are the subject of the present Adversary Proceeding. The dispute centers around a series of interrelated transactions involving the Debtor, the Parents, and Dornfeld, the prospective and ultimate purchaser of the real estate at issue.

The first putative transaction was initiated prior to the Debtor's bankruptcy filing. In the early part of May, 1986, Dornfeld was interested in expanding his mulch business and started to negotiate with the Debtor to purchase the two tracts of land abutting Dornfeld's property. An offer was made in the approximate amount of $45,830. The Debtor's attorney for the

sale, Lester Weinstine, prepared an installment contract for one of the tracts of land in the amount of $35,800 and a contract for deed for the other tract, in the amount of $10,000.

In the early part of July, the deal collapsed. The actions which culminated in the failure of the sale to Dornfeld are in dispute.[1] However, the testimony of Dornfeld was uncontroverted and highly credible. Dornfeld testified that by early July his expansion needs were becoming critical and that he opted for similar property in Wisconsin because the Debtor could not give clear title and that he could not wait until the Debtor cleared up his affairs.

On July 17, 1986, the Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. Shortly thereafter, the Parents offered to purchase the same two tracts of land for the price of $7,791.10 and an additional 19 lots for $6,950 from the Debtor. The Parents had made the offer based upon an appraisal which was made on behalf of the Bank.[2] The Parents testified that they intended to use the property for farming purposes in connection with their farming operation and to provide their son with funds to continue his farming operation.

On September 15, 1986, the Debtor filed a Petition to Sell Property Free and Clear of Liens, wherein he proposed to sell the two tracts and the 19 lots to the Parents. A certificate of service was filed in the Bankruptcy Clerk's office, notifying creditors of a hearing on the Debtor's Petition, to be held on October 10, 1986.[3]

---

1. The Debtor alleged that at a meeting with representatives of the Bank, the Debtor proposed to sell the two tracts of land to Dornfeld for $45,830 and use the proceeds to pay off the Bank, but that the Bank would not release its lien on the property. This allegedly prevented the sale from being completed. Burns, the attorney for the Debtor at the time, testified that Weinstine had sought to "finesse" the Bank by transferring the property first to the Parents through the Debtor's bankruptcy case and then to Dornfeld.

2. The appraisal made by the Ray Harvey Agency, on behalf of the Bank, covered the entire 181 acres owned by the Debtor and arrived at a fair market value for the property in the amount of

$390 per acre. However, the appraisal broke down the F.M.V. of each of the 19 lots. The Parents offered the specific F.M.V. of each of the 19 lots and $340 per acre for the two tracts of land.

3. The notice stated:
PETITION TO SELL PROPERTY FREE & CLEAR OF LIENS consisting of 19 lots known as Schipper's Subclusion Subdivision, Section 78, Twp. 20 N., Range 2 E. of the 4th P.M. in Rock Island County, Illinois, for $14,741.10 to George Schipper
ORIGINAL MOTION IS ON FILE IN THE CLERK'S OFFICE, U.S. BANKRUPTCY COURT, ROOM 200, FEDERAL BUILDING, 211 SOUTH COURT STREET, ROCKFORD, ILLINOIS 61101

On October 10, 1986, a hearing was held on the Debtor's Petition. Counsel for the Bank and the Debtor's bankruptcy attorney appeared, but no objections were made, either in writing or orally in Court. Indeed, an officer of the Bank testified at the trial on April 19, 1989, that on October 10, 1986, he had thought the sale was a good one, based upon the Bank's appraisal of the property.[4] The Court granted the Debtor's Petition to Sell Free and Clear of Liens, as well as the Debtor's request to appoint Weinstine as special counsel to handle the closing of the sale with the Parents. The sale was thereafter consummated.

In early March, 1988, over one year later, Dornfeld became interested in the two tracts of real estate again and notified the Debtor of his interest in purchasing the property. After being told that the Parents now owned the land, Dornfeld contacted Burns to prepare an installment sale contract for the one tract of land and a contract for deed on the other tract. Dornfeld intended to purchase the same two tracts of land as in 1986, for the same amount, $45,880, although the structure of the deal was somewhat different. The sale was consummated in Burn's office, but Weinstine was not present. After feeling uneasy about the transaction, Burns notified counsel for the Bank of the sale and the purchase price.[5] Shortly thereafter, the U.S. Trustee was notified of the events which had transpired, and instructed Burns to deposit the downpayment, in the approximate amount of $11,000, into a bank account pending further notice.

On May 16, 1988, the Debtor's Chapter 11 Plan was confirmed. Shortly before that time, the Bank filed a Motion to Set Aside Sale Free and Clear of Liens. After further analysis by the parties at several pretrial hearings, the Bank filed a Complaint for Equitable Relief and for Turnover of Funds, naming the Debtor, the Parents, Dornfeld and Burns as Defendants. After the trial on April 19, 1989, the Court took the matter under advisement.

## DISCUSSION

Although at first blush the facts as alleged appear to smack of fraud, the testimony and documents presented at the trial do not bear this out. At the conclusion of the trial, the Court held on the record that it could not find the existence of a fraudulent scheme, a conspiracy, or dishonesty, based upon the evidence. The fraud issue, therefore, will not be addressed any further.

Similarly, the Bank's allegation, in Count I of its Complaint, that the notice of the sale which was sent to creditors was defective because it did not list the extra two tracts of land that were to be included in the sale was proven by the evidence to be without merit. The testimony established that the Bank specifically did not object at the hearing on the sale to the notice given or the sale of the two tracts and the 19 lots because the transaction was a "good deal." Indeed, the Bank abandoned this argument at trial. Consequently, the Court finds that the notice of the sale to creditors was effective.[6]

---

**4.** The Bank vigorously disputed the Debtor's testimony that it was made aware of the Dornfeld offer or of the specific amount of the offer at a meeting with the Debtor held in June or July. See Footnote 2, supra. The Bank contended that had it known of the earlier offer, it would have objected.

**5.** The parties are in dispute as to the specific chain of events which transpired. Burns testified that he was notified by Dornfeld "out of the blue" that the deal was on again but only with the Parents, and that Burns sent Weinstine the necessary documents. After not receiving from Weinstine a copy of the Order of this Court allowing the property to be sold free and clear to the Parents, Burns notified counsel for the

Bank. It was established, though, that Burns did not contact either the Debtor's or the Parent's Counsel to notify them of any impropriety or to request a copy of this Court's Order approving the sale.

**6.** A sale under Section 363(b) which fails to comply with notice or hearing requirements may be set aside on appeal, but is not void. It may be made void only after a finding by a court that Section 363(m) has been complied with. Similarly, confirmed sales under this section can only be set aside under Rule 60(b) (Bankruptcy Rule 9024). *See In re Met–L–Wood Corp.*, 861 F.2d 1012 (7th Cir.1988). The Bank has failed to meet its burden under both Rule 60(b)(1), (3), or (6) and Section 363(m).

The Bank's Complaint turns, then, on one principal argument: The unsecured creditors were not informed of the prior offer by Dornfeld to purchase the property from the Debtor, and that the Debtor, as Debtor-in-Possession, breached his fiduciary duty to all creditors by failing to disclose the information. From this argument, the Bank posits various theories of recovery in the three remaining counts of its Complaint: Count II alleges that the profits earned by the Parents should be turned over for the benefit of unsecured creditors; Count III alleges that Burns should turn over the funds held by him, and that Dornfeld should make any further payments into the Court[7], all for distribution to unsecured creditors; and Count IV alleges that a constructive trust should be imposed on the funds held by Burns, and to distribute the funds so held to unsecured creditors.

Initially, the Court observes that the relief sought by the Bank is not normally brought by an individual creditor. Under most circumstances, only the Debtor may bring a suit on behalf of the estate to set aside a fraudulent conveyance. However, courts have recognized the availability of relief in the nature of a derivative suit on behalf of the debtor, when the debtor refuses to exercise its avoiding powers. *See In re Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir.1988), *In re Automated Business Systems, Inc.*, 642 F.2d 200 (6th Cir. 1981), *In re Jones*, 37 B.R. 969 (Bankr.N.D. Tex.1984).

In the present case, the Debtor most likely would not have brought the suit. The two Defendants who would have had to tender the profits from the transaction are the Parents of the Debtor. This alone, though, is not enough to warrant a creditor's suit on the Debtor's behalf. Only where the Debtor unjustifiably fails to bring a suit should a creditor be allowed to do so. Because this issue was not vigorously contested at the trial, the Court will not address or question the Bank's standing to bring this action.

The fiduciary duty of a Debtor or a Trustee in bankruptcy has not been addressed in detail by the Courts. Most recognize, though, that a Chapter 11 debtor is a fiduciary of his creditors and the estate. *In re Telemark Management Co., Inc.*, 41 B.R. 501 (Bankr.W.D.Wis.1984). A debtor-in-possession holds its powers in trust for the benefit of the creditors and has the duty to protect and conserve property in his possession for their benefit. *In re Modern Office Supply, Inc.*, 28 B.R. 943 (Bankr.W.D.Okla.1983), *In re Devers*, 759 F.2d 751 (9th Cir.1985). The scope and breadth of this duty, however, is somewhat undefined.

The obligations of a fiduciary have received great attention in other areas of the law. The officers of a corporation are fiduciaries of the corporation, and owe the corporation fiduciary duties of care and loyalty. *In re Western World Funding, Inc.*, 52 B.R. 743 (Bankr.D.Nev.1985). Under the duty of care, the fiduciary must make informed decisions on matters related to the corporation. *Smith v. Van Gorkom*, 488 A.2d 858 (Del.1985). The duty of care requires the fiduciary to use reasonable diligence in gathering and considering material information. *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264 (2nd Cir.1986).

Under the duty of loyalty, the fiduciary must refrain from self dealing with the assets of the entity to which the duty is owed, or otherwise acting in self interest. *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929 (Del.1985), *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del.1983). Inherent in the fiduciary relationship is the prohibition against self dealing. *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255 (2d Cir.1984). This duty is often brought into question when the fiduciary participates on both sides of a transaction.

Engaging in "interested" transactions does not constitute a per se violation of these fiduciary obligations. Rather, the fiduciary need only prove that the transaction was inherently fair. *Norlin*, supra, *Rosenblatt*, supra. The essence of the fairness test is whether or not under the

---

7. An inappropriate place to make payments.

circumstances the transaction carries the earmarks of an arm's length bargain. *Western World*, 52 B.R. at 763.

These fiduciary obligations are similar to those of a debtor in bankruptcy. After bankruptcy is filed, the management's fiduciary obligations extend to the creditors of the debtor. *In re Western World Funding, Inc.*, supra, *In re Baldwin–United Corp.*, 43 B.R. 443 (Bankr.S.D.Ohio, 1984), *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). However, the fiduciary's obligations in bankruptcy and the standards upon which they are measured are not the same, for all types of transactions, as those applied outside of bankruptcy. While a debtor's business discretion has an important role in Chapter 11, that role is reduced as the nature of the decision becomes increasingly significant. The discretion afforded the debtor gives way to the processes established under the Bankruptcy Code. The processes may require negotiation and voting, or Court approval, rather than unilateral action by the debtor. The relevant inquiry becomes not the quality of the decision, but whether the necessary processes were followed.

The standard applied under Section 363 of the Bankruptcy Code for sales made outside the ordinary course of business has been stated with frequency:

> For the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling or leasing the property outside the ordinary course of business ... Whether the proffered business justification is sufficient depends on the case.

*In re Continental Airlines*, 780 F.2d 1223, 1226 (5th Cir.1986), *In re Lionel Corp.*, 722 F.2d 1063 (2nd Cir.1983), *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir.1986), *In re Naron & Wagner, Chartered*, 88 B.R. 85 (Bank.D.Md.1988), *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15 (Bankr.E.D.Pa.1987). Coupled with this business judgment standard is the added protection of adequate notice to all credi-

tors and parties in interest and a hearing on the issues. *See In re Naron & Wagner, Chartered*, supra, *In re Industrial Valley Refrigeration*, supra. The Code, therefore, provides a procedure whereby the assets of the debtor can be sold free and clear of liens and encumbrances if the business environment is favorable, after the creditors have had an opportunity to scrutinize the sale.

The standard applied under Section 363 is applicable to the determination of a debtor's fiduciary duty, and breach thereof, in connection with the sale of assets outside the ordinary course of business. It takes into consideration the Debtor's obligations to the many competing interests which characteristically arise in bankruptcy. Equally relevant is the analysis applied by courts when evaluating actions taken by a fiduciary of a corporation. The similarities between a bankruptcy estate and a solvent corporation are sufficient enough for the court to consider the fairness standard applied under state law in the corporate cases. Under the circumstances here, the Court is unable to find a breach of a fiduciary duty, or a duty of trust owed to the estate and the creditors, by the Debtor under either standard.

■ The evidence established that the sale of the real estate was based upon sound business reasons as required under Section 363. Some of the factors recognized by the *Lionel* court to be valid business reasons were shown to exist. The sale price was based upon an appraisal made by an independent appraiser. In fact, the Bank has not argued that the sale price was not at fair market value, or unreasonably low. The proportionate value of the real estate to the estate as a whole is negligible. The Debtor's need for cash to continue the operation of the business and thereby generate a dividend to unsecured creditors upon confirmation, has been established.

Under the second part of the analysis, i.e., whether the notice and hearing requirements were satisfied, the Debtor's actions are equally unassailable. The Court has already found that adequate notice was

sent to interested parties. The Motion clearly disclosed the relationship of the purchasers with the Debtor. The Bank, through its counsel, appeared at the hearing, but did not object. Other parties were given the opportunity to appear and object, but chose not to do so. Indeed, because the Bank has been proceeding on behalf of all unsecured creditors, it can be said that the Bank, as a representative of the unsecured creditors, owed those creditors a fiduciary duty and, had there been a basis for doing so, was duty bound to object on their behalf. See In re Mesta Machine, Corp., 67 B.R. 151 (Bankr.W.D.Pa.1986), Pension Benefit Guaranty Corp. v. Pincus, Verlin, Hahn, Reich & Goldstien Professional Corp., 42 B.R. 960 (E.D.Pa.1984).

The Debtor did not breach his fiduciary duty by failing to disclose the prior offer of Dornfeld under the standard of Section 363. That standard, which represents the balancing of the rights of the Debtor, including his goal of obtaining funds to reorganize, with the rights of creditors, including their goal of receiving the largest possible dividend, has been met. The argument that a different result is warranted because insiders participated in the alleged breach has been satisfactorily refuted by the analysis under this standard. The parental relationship of the purchasers was disclosed in the Debtor's Motion and was discussed at the hearing on October 10, 1986.

Even under the general standard of inherent fairness, which is often applied to transactions involving fiduciaries and the entities to which the fiduciary obligation runs, the Debtor's conduct passes muster. The purchase price of the real estate equaled its fair market value at the time of the sale, based upon an appraisal done by an independent, reputable appraiser. The Debtor could have held onto the land in hopes of a renewed interest by Mr. Dornfeld, but chose not to do so. Instead, after notice and hearing, the Debtor was authorized by this Court to sell the property to his Parents. The proceeds were to be used to fund business operations necessary to the success of the reorganization. The sale was made in good faith and carries all the earmarks of an arm's length transaction.

\*　　\*　　\*　　\*　　\*　　\*

An argument not made by the parties, but which has been considered by the Court, is whether, putting aside questions of fraud or fiduciary breach, there is some broader concept under which the "equities compel" the profits to be turned over to the unsecured creditors for distribution. Typically, this represents grounds for setting aside a sale under Rule 60(b). See In re Chung King, 753 F.2d 547 (7th Cir.1985), In re F.A. Potts & Co., Inc., 86 B.R. 853 (Bankr.E.D.Pa.1988). Although the Court has already found that the sale should not be set aside, it would not be inappropriate to address this argument relative to the request of the Bank that the profits of the Parents should be turned over to creditors.

The Parents purchased the real estate for farming purposes. The price was established by an appraisal made on behalf of the Bank. Even had the Parents known of the prior offer, which is not clear from the record, it is evident that the possibility of resale to Dornfeld or any other purchaser was subject to some degree of risk. The Parents incurred that risk and held the property for over one year. They are entitled to be compensated for the risk they incurred.

\*　　\*　　\*　　\*　　\*　　\*

In summary, the Court finds that the actions of the Debtor in October, 1986, were made in the best interests of the creditors and the sale price was fair. Under these circumstances, the sale could not have been prevented even if the prior offer had been disclosed. To give the profits from the sale by the Parents to the Debtor's unsecured creditors would require the Court to ignore the risks that the Parents incurred, grant a windfall to unsecured creditors, and impinge upon the policy of finality of bankruptcy sales. The Court will not grant such inequitable and inappropriate relief.

## CONCLUSION

The Court concludes that the Debtor did not breach a duty of trust, or a fiduciary

duty owed to the estate or the creditors. Consequently, the relief sought by the Bank, in the forms set out in Counts I, II, III and IV of the Complaint cannot be granted. The Adversary Proceeding should be dismissed, without costs.

IT IS SO ORDERED.