**In re CONROE FORGE & MANUFACTURING CORPORATION, Debtor.**

Bankruptcy No. 87–3043.
Motion No. 87–6996M.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 19, 1988.

F. Scott Gray, Robert G. Sable, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for debtor.

H. Brian Peck, Baskin, Flaherty, Elliott & Mannino, P.C., Pittsburgh, Pa., for Victoria Mach. Works.

George M. Cheever, Kirkpatrick & Lockhart, Pittsburgh, Pa., for Mellon Bank.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter presently before the Court is secured creditor Mellon Bank's oral request, made at a hearing on Debtor's motion to sell free and clear, to receive immediate payment of proceeds of sale of a piece of heavy machinery.

Mellon Bank has submitted a "Memorandum of Law In Support of the Proposition that, When a Secured Creditor's Collateral is Sold Pursuant to 11 U.S.C. § 363 in a Liquidating Chapter 11 Case, the Proceeds of Sale May Be Distributed Immediately to the Secured Creditor." The Court finds the facts to be as follows.

Conroe Forge & Manufacturing Corporation (Debtor) is a corporation formerly engaged in the business of manufacturing die forgings. The Debtor's sole manufacturing facility is located in Conroe, Texas.

Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania on November 6, 1987, after having ceased operations. Debtor is a Debtor-in-Possession and does not intend to resume its manufacturing operations.[1] According to the Debtor's schedules, Mellon Bank holds a security interest in Debtor's land, buildings, machinery and equipment and is owed $2,254,004.51. The Debtor has valued these assets in its schedules at $1,909,360.77. Of this amount $440,831.69 represents the value of real estate pursuant to a tax assessment which may or may not reflect the fair market value of the realty.

In early December, the Debtor filed an emergency motion to sell certain machinery free and clear of liens, claims and encumbrances and a request that the Court shorten the notice period and conduct an expedited hearing. Mellon Bank did not oppose and the Court granted the requests. A hearing was held on December 23, 1987, because Interstate Drop Forge Company (Buyer) had an immediate need for the equipment and its offer would expire if it was not able to transport the machinery to Wisconsin before the Wisconsin Frost Laws went into effect. The Wisconsin Frost Laws prohibit movement of heavy machinery and the like over Wisconsin roads during certain winter months. From these facts, the absence of any relationship between Debtor and Buyer, the utilization of an independent broker and Mellon Bank's consent to the sale, the Court finds that a bona fide emergency existed and that the Buyer acted in good faith.

The gross sales price offered by Buyer was $149,000.00 which was represented without contradiction to be a fair and reasonable price. There were no other bidders at the hearing. At the request of the Debtor and with the consent of all parties who were present at the sale and hearing on this motion, the Court confirmed the sale and directed that a 10% (ten per cent) brokerage commission be paid out of these gross receipts and an additional amount be placed in escrow pending resolution of the broker's claim for reimbursement of expenses.

Also escrowed was $7,200.00 representing a claim by Victoria Machine Works for repair charges allegedly secured by a repairman's possessory lien on a component of one of the presses. Victoria Machine Works agreed to turn over the piece in order that the Buyer would complete the sale inasmuch as the component increases the useful life of the machinery and, therefore, its absence would affect the sale. Debtor filed an adversary action to require Victoria Machine Works to turn over the component. Victoria Machine Works did not have an opportunity to respond to the adversary complaint prior to the sale but did agree to release the component to facilitate the sale. Victoria Machine Works has

---

1. In fact, albeit after the sale involved herein, Debtor filed a disclosure statement and a liquidating Chapter 11 plan. As yet, there has been no hearing on the disclosure statement or plan.

asserted that its response to the adversary complaint will claim that approximately $43,000 is due for repair work on the machinery sold. Therefore, at the hearing on December 23, 1987, Victoria Machine Works argued that the amount of its entire claim should be escrowed pending the outcome of the trial on the adversary proceeding. Thus, there is a dispute concerning the appropriate disposition to be made of these funds.

Mellon Bank argued that in order to adequately protect its interest, the Court must apply either 11 U.S.C. § 361(1) or the "indubitable equivalen[ce]" language of 11 U.S.C. § 361(3) and must authorize the immediate payment to Mellon Bank of the net proceeds of sale. Mellon Bank did not deny the Court's suggestion that 11 U.S.C. § 361(2), which permits a lien substitution to proceeds, would provide that protection; rather, Mellon Bank's position is that it would benefit more from immediate payment. The motion to sell free and clear specifically provided for the transfer of all liens to proceeds. On January 13, 1988, this Court entered an Order requiring that all proceeds be escrowed except for amounts previously authorized to be paid to the broker.

### Discussion

Bankruptcy Rule 3021 provides:

> After confirmation of a plan, distribution shall be made to creditors whose claims have been allowed....

This provision is the successor to former Bankruptcy Rule 10–405(a) which is derived from § 224(3) of the Bankruptcy Act. Rule 10–405(a) provided that "... after confirmation of a plan distribution shall be made ... to ... creditors whose claims have been allowed...." The problem in the case at bar arises from Bankruptcy Code § 1123(b)(4) which enables Debtors to structure a liquidation through a plan and states, in substance, that a plan *may* provide for the sale of all or substantially all estate assets and the distribution of proceeds.

■ The general rule is that distribution should not occur except pursuant to a con-

firmed plan of reorganization, absent extraordinary circumstances. *Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir.1986). *See* 6A Collier on Bankruptcy, ¶ 11.14 (14th ed. 1977). *See also* 11 U.S.C. § 1123(a)(5) (plan must provide adequate means for implementation); and Bankruptcy Rule 3021.

■ It is within the discretion of the Bankruptcy Court to determine whether extraordinary circumstances exist so that sale proceeds may be paid to creditors outside the confines of a plan. *Cf. In re Lilly C. Anderson*, 833 F.2d 834, 836 (9th Cir. 1987) (concerning award of postpetition interest but denial of "lost opportunity" compensation to oversecured creditor after sale of collateral by Trustee appointed to conduct sale in apparent Chapter 11 where no plan had been confirmed). *See also, In re Industrial Office Building Corp.*, 171 F.2d 890, 892 (3d Cir.1949) (authorizing interim distribution of funds in excess of those needed for reorganization).

■ *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983) (rehearing and rehearing en banc denied), concerned a sale of a substantial portion of Debtor's assets before a plan had been confirmed. The appellate court found that the terms of sale would have dictated the plan provisions without circulation of a proposed plan. The sale was not permitted. Although the facts of the case at bar are not on point with those of *Braniff*, this court finds persuasive the Fifth Circuit's opinion that, first, Chapter 11's confirmation requirements (herein a plan and disclosure statement) should not be short-circuited and, second, approval of preplan distributions in liquidating Chapter 11 cases would leave little incentive for completing the requirements of the disclosure statement and plan preparatory to a reorganization by way of liquidation. *Id.* at 940.

■ The policy behind Chapter 11 reorganization is successful rehabilitation. *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984). However, the concept of reorganization includes liquidation. *In re*

*Koopmans,* 22 B.R. 395, 398 (Bank.D.Utah 1982). *See also In re Industrial Office Building Corp., supra,* 171 F.2d at 892. This Court, therefore, must determine whether the property, herein proceeds, is necessary for an effective reorganization. *See In re Keller,* 45 B.R. 469, 471 (Bank.N.D.Iowa 1984). In a liquidating Chapter 11 where Debtor has ceased operations and collateral value is not decreasing, ordinarily all property will be necessary for an effective reorganization. "Necessary" property has been defined as that which " 'will contribute' to a plan of reorganization." *In re 6200 Ridge, Inc.,* 69 B.R. 837, 843 (Bank.E.D.Pa.1987). If, as in this case, circumstances require confirmation of a sale before a liquidating plan has been confirmed, the proceeds, which will be earning interest, are necessary to the plan which presumably will provide for the sale of the rest of Debtor's assets and distribution of proceeds.[2] *Cf.* 11 U.S.C. § 1123(a)(5) (plan must provide adequate means for implementation).

■ If distribution is made to creditors in a liquidating Chapter 11 before confirmation of a plan there will be little incentive for parties in interest to prosecute the case in an expeditious manner much less to perform the work required to issue and obtain approval of a disclosure statement and plan. *See In re Braniff Airways, Inc., supra,* 700 F.2d at 940; *In re Jartran, Inc.,* 71 B.R. 938, 942 & n. 6 (Bank.N.D.Ill., E.D.1987) (court rejected argument that because debtor's case was a liquidating Chapter 11 it should be treated as a Chapter 7 for distribution purposes). In addition, if distribution of assets occurs before confirmation, there will exist no means by which a plan may be implemented. Such a course would violate § 1123(a)(5).

Moreover, Bankruptcy Rule 3021 provides that distribution pursuant to a Chapter 11 plan is authorized only with respect to *allowed* claims. The amount of Mellon Bank's allowed claim has not been determined and could depend on many factors including, *inter alia,* the terms of a proposed plan, whether or not the plan is accepted, and whether or not the case suffers conversion to a Chapter 7.

■ The crux of Mellon Bank's argument is that even if it eventually receives the proceeds of sale plus interest it would receive a much greater return if it is paid the proceeds now and is able to use them in the ordinary course of its business. In support of this position, Mellon Bank relies on *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984), where, in deciding a motion for relief from stay, the court held that the secured creditor was entitled to compensation for the delay it had suffered in enforcing its rights in order to give it, as nearly as possible, the benefit of its bargain.

The United States Supreme Court recently discussed the concept that an undersecured creditor is not entitled to compensation for the delay occasioned by the automatic stay provisions of the Code. In *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* — U.S. —, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988), the Court stated that "the undersecured petitioner [creditor] is not entitled to interest on its collateral during the stay to assure adequate protection under 11 U.S.C. § 362(d)(1)." *Id.* at —, 108 S.Ct. at 635. In the case at bar, as in *Timbers of Inwood,* the undersecured creditor has not sought relief from stay under § 362(d)(2) or on any other ground, but merely raised the issue of what constitutes adequate protection.[3] To the extent that *Timbers of Inwood* discussed the payment of interest for use of an undersecured creditor's collateral during the automatic stay period, this Court finds it apposite to the instant case, and finds that *American Mariner,* which discussed a similar premise after a creditor applied for relief from stay,

---

**2.** The plan proposed by Debtor but as yet uncirculated to creditors does precisely this.

**3.** The Court emphasizes that this issue was raised by the creditor after it consented to a sale

to be inapposite.[4] Even so, Mellon Bank's interest in the value of its collateral is preserved because the sale itself determined the value of the collateral and the sales proceeds, to which Mellon Bank's lien now attaches, are escrowed.

■ At the hearing in the instant matter Mellon Bank's counsel indicated that it was his opinion that Mellon Bank is undersecured and not secured in all assets and probably would sustain a deficiency. Furthermore, counsel did not know whether Debtor's obligations to Mellon Bank had been accelerated by reason of default. These factors, coupled with those discussed above, lead the Court to find that escrowing the proceeds at interest adequately protects Mellon Bank's interest. In addition, Mellon Bank has shown no basis upon which immediate payment of the net proceeds of sale would be required to afford it adequate protection nor why substitution of liens denies adequate protection. Whether or not Mellon Bank receives the indubitable equivalent of its claim, as argued at the hearing, is a matter for determination at the time of plan confirmation, *Timbers of Inwood, supra,* — U.S. at ——, 108 S.Ct. at 632–33, especially where the value of its security has not been deter-

mined and where there is, as in this case, Debtor's assurance that it has prepared a liquidating plan.[5]

This Court also notes that case law in the Third Circuit which construed certain provisions of former Chapter XI of the Bankruptcy Act established that a sale of assets before confirmation of a plan is permissible only on the basis of a demonstrated emergency. "Emergency" was defined as an "imminent danger that the assets of the ailing business will be lost if prompt action is not taken." *In re Solar Manufacturing Corp.,* 176 F.2d 493, 494 (3d Cir.1949). *Compare In re White Motor Credit Corp.,* 14 B.R. 584, 4 C.B.C.2d 1562 (Bank.N.D. Ohio 1981). *And see Matter of Mesta Machine Co.,* 30 B.R. 178 (Bank.W.D.Pa.1983) (concerning a Code case filed in the Western District of Pennsylvania pursuant to Chapter 11).[6] If the sale itself is permissible only in the most exigent circumstances absent confirmation of a Chapter 11 plan, distribution of the proceeds will require, at minimum, a showing of similar immediate need. That a creditor could receive a better return through immediate payment does not mean that the creditor is not adequately protected by substitution of liens

free and clear of liens and encumbrances with transfer of liens and encumbrances to proceeds.

**4.** Of further note is that the Bankruptcy Court for the Eastern District of Pennsylvania has chosen to disagree with *American Mariner* insofar as that case may require compensation for delay to every undersecured creditor in every case. *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 376, 388 (Bank.E.D.Pa.1987). This court agrees that adequate protection depends on the circumstances of each case.

**5.** Debtor's liquidating plan was filed with the court while this opinion was pending.

**6.** This Court is aware of the opinion of the Bankruptcy Court for the Eastern District of Pennsylvania in *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.,* 77 B.R. 15 (Bank.E.D.Pa.1987), which held that the Third Circuit's decision in *Abbotts Dairies* implicitly overruled *Solar Manufacturing* and that therefore "the Third Circuit has ... abandoned the 'emergency-only' standard ... enunciated in *Solar Manufacturing,*" adopting instead a test which includes as an element a showing of a "sound business purpose". 77 B.R. at 20, 21.

This Court's examination of *Abbotts Dairies* revealed that an emergency sale was the event which triggered the appeal, 788 F.2d at 144–45, that the question of exigent circumstances was not at issue having been found by the district court to exist, and that the only issue before the Third Circuit and on remand was the existence of good faith between Debtor and Buyer. Nonetheless, this Court finds that the more stringent test of *Solar Manufacturing* was met in the case at bar, and it is not necessary to choose between the two standards. *McLaughlin v. Arco Polymers, Inc.,* 721 F.2d 426, 430 n. 5 (3d Cir.1983) (Third Circuit panel is bound by reported circuit opinions "unless and until they are reversed by the in banc court"); *Gardner v. Com. of Pa. Dept. of Public Welfare,* 685 F.2d 106, 108 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982) (a panel of the Third Circuit "is not free ... to overrule a governing precedent in this circuit"). *See Penn Central Transportation Co., Inc. v. Celotex Corp.,* 403 F.Supp. 70, 74 (E.D.Pa.1975), *aff'd,* 538 F.2d 320 (3d Cir.1976) (on a statute of limitations question, the court stated "to overrule prior [judicial] authority is not lightly to be presumed, especially an overruling *sub silentio*") (citations omitted).

to proceeds especially where the proceeds are escrowed at interest pending confirmation of a liquidating plan, and when the secured creditor agreed to the Debtor's motion for sale providing for transference of liens to proceeds.

■ Mellon Bank cites various Code provisions in support of its argument that this Court may order immediate payment; however, whether or not the Court may so order is not the issue. The issue is whether the best interests of all parties in interest will be served by the course of action requested. *See Matter of Realty Associates Securities Corp.*, 58 F.Supp. 220 (E.D. N.Y.1944) (regarding distribution of excess cash). *See also In re Industrial Office Building Corp.*, 171 F.2d at 893. At the time of the hearing on the sale a creditor's committee had not been appointed in this case. Furthermore, this case was only a few weeks old and, in this Court's view, an adequate opportunity to examine Debtor's affairs and/or negotiate and/or form a plan of reorganization had not been provided. There is no dispute that the sale was for a fair and reasonable price and in the best interest of creditors because a delay would have meant either the loss of the sale or a postponement until after the winter months with corresponding loss to the value of the collateral itself. In addition, a liquidating plan has been proposed which includes suggested distribution of proceeds to classes of creditors. Thus creditors are provided an opportunity to examine the proposal for liquidation pursuant to the plan and disclosure statement in accordance with the policy and spirit of Chapter 11 of the Bankruptcy Code. *See H.R. No. 95–595 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787 (Chapter 11 "incorporates the essence of the protection features of ... Chapter X").

Furthermore, § 1106 provides, in pertinent part:

(a) A trustee shall—

(5) ... file a plan ... a report of why the trustee will not file a plan, or recommend conversion ... or dismissal....

Pursuant to § 1107(a) a debtor-in-possession is charged with the obligations of a trustee. No justification exists, based on the instant facts and the provisions and policies of the Bankruptcy Code, to order remittance of proceeds to Mellon Bank before confirmation of a plan of reorganization.

### Conclusion

In accordance with the foregoing, this Court holds that in this liquidating Chapter 11 case where there has been a sale of assets prior to confirmation of a plan and an undersecured creditor has not established that immediate payment to it of proceeds of sale is required for adequate protection, there will be no distribution until a plan is confirmed. *See* H.R. No. 95–595, 95th Cong., 1st Sess. (1977) (the purpose of reorganization "is to form and have confirmed a plan of reorganization").

If Mellon Bank believes that it is suffering unduly through the pendency of this Chapter 11, it has many courses of action to choose from under the Bankruptcy Code. At this point and in this particular matter Mellon Bank is adequately protected by the substitution of liens to proceeds and payment of proceeds prior to plan confirmation will be and hereby is denied in accordance with the Order of this Court dated January 13, 1988.