In re AIR BEDS, INC., a California
corporation, Debtor.

ROSENBERG REAL ESTATE EQUITY
FUND III, a California group
trust, Appellant,

v.

AIR BEDS, INC., and Internal Revenue
Service, Appellees.

BAP No. NC–87–1423.
Bankruptcy No. 586–05703–R.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 18, 1988.

Decided Oct. 17, 1988.

David A. Schuricht, Stark, Wells, Rahl, Field & Schwartz, Oakland, Cal., for appellant.

Mary E. Jansing, Sp. Asst. U.S. Atty., San Jose, Cal., Joseph P. Thompson, Burriss, Sumner & Palley, Mountain View, Cal., for appellees.

Before VOLINN, MEYERS and ASHLAND, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

Rosenberg Real Estate Equity Fund II (Rosenberg), debtor's landlord, appeals certain findings and conclusions in an order authorizing the sale of debtor's equipment other than in the ordinary course of business and disbursement of the proceeds to the Internal Revenue Service. Rosenberg also appeals a ruling that a patent sold by the president of Air Beds, Inc., the debtor corporation, as part of the same transaction was not part of the debtor's estate.

## I. FACTS

The Internal Revenue Service (IRS) filed with the Secretary of State of California Notices of Federal Tax Lien encumbering debtor's property and securing unpaid taxes. The "Stipulation for the Use of Cash Collateral," discussed below, states that between April 7, 1986 and November 3, 1986, the IRS filed Notices of Federal Tax Lien encumbering debtor's property and securing unpaid taxes of $121,268.80. The Notices of Federal Tax Lien were not part of the record below. The IRS, one of the appellees, has appended to its brief copies of the Notices which reveal the following filings with the Secretary of State of California:

| | |
|---|---:|
| April 18, 1983 | $ 70,502.12 |
| April 11, 1986 | 61,566.09 |
| April 14, 1986 | 53,856.20 |
| August 21, 1986 | 40,033.68 |
| **TOTAL** | **$225,958.09** |

Thus, there appears to be a substantial discrepancy as to the amounts of the IRS liens and the dates they were perfected.

In any event, on November 20, 1986, the IRS seized and levied upon all of the assets and inventory of the debtor. On November 21, 1986, debtor filed a petition in bankruptcy under Chapter 11. The IRS consented to a release of the debtor's property subject to the levy on the terms set forth in

the "Stipulation for the Use of Cash Collateral" embodied in an order entered on December 5, 1986. The stipulated order provided adequate protection to the IRS in the form of a replacement lien on post-petition inventory and accounts receivable, and required periodic payments. The stipulated order also provided that in the event of a default, the IRS could resort to collection procedures for the unpaid balance without the necessity of a motion and hearing to lift the automatic stay. The stipulated order was entered without notice and hearing.

Debtor did not pay post-petition rent, and on March 30, 1987, Rosenberg obtained a writ of assistance to evict the debtor. As of April 2, 1987, the date of the hearing on the order at issue, the debtor was still occupying the premises and owed approximately $25,000 in post-petition rent.

The debtor, apparently unable to comply with the terms of the "Stipulation for the Use of Cash Collateral," informed the IRS through counsel that it intended to file a plan of liquidation under § 1123(b)(4) of the Bankruptcy Code. On April 2, 1987, on an order shortening time, the debtor made application for an order approving the sale of equipment other than in the ordinary course of business and disbursement of the proceeds. The debtor sought approval of the sale of equipment, tools and other property for $60,000. In its application, the debtor stated that as part of the sale, Keith Reid, the president of Air Beds, was selling all of his patent rights in a certain patent for an additional $15,000. The debtor asserted that the patent was Reid's personal property and that the debtor had no ownership rights in it; therefore, it was not part of the estate.

In its application for the order approving the sale, debtor proposed to pay the proceeds of the sale to the IRS and the State of California Employment Development Department for "priority pre-petition and post-petition taxes" of approximately $150,-000. Rosenberg objected to the sale. The bankruptcy court approved the sale and the debtor's proposed disbursement of the proceeds. The order contained a finding that the IRS lien was perfected prior to the filing of the petition, and that the IRS had priority as to receipt of the sale proceeds.

The effect of the order is less than clear; the mandatory language of the order, which is not self-contained, provides that the proceeds of the sale are to be distributed in accordance with the debtor's application, which, as noted, stated that the proceeds were to be distributed to the IRS and the State of California Employment Development Department for pre-petition and post-petition taxes.

The court also found that the patent was not property of the debtor's estate, and ordered that the court had no jurisdiction over the proceeds of its sale.

## II. ISSUES

Rosenberg assigns error to that portion of the order approving the debtor's application to disburse the sale proceeds. Rosenberg also assigns error to the finding of fact that the IRS has priority as to receipt of the sale proceeds because its lien was perfected prior to the filing of the debtor's petition. Finally, Rosenberg assigns error to that portion of the order declaring that the debtor has no interest in the proceeds of the sale of the patent.

Rosenberg, on appeal, does not challenge the validity of the sale itself but only the distribution of the proceeds, contending that the distribution of the $60,000 to the IRS was in error, regardless of whether the proceeds are to be applied to pre-petition or post-petition taxes. In the event that the proceeds are to be applied to pre-petition taxes, Rosenberg contends that a bankruptcy court, in a Chapter 11 case, may authorize a distribution of property of the estate in payment of pre-petition claims only in accordance with the provisions of a confirmed plan. Rosenberg further asserts that if the proceeds are to apply only to post-petition taxes, then, in the absence of any assurance that the estate will have sufficient assets to make proportionate distributions on account of all administrative expense claims, it is an abuse of discretion for a bankruptcy court to authorize a distri-

bution solely on account of post-petition tax claims.

## III. DISCUSSION

A. Did the bankruptcy court err in ordering that the sale proceeds be distributed to pay taxes, whether pre-petition or post-petition?

We review appeals from orders involving motions to sell property of the estate other than in the ordinary course of business pursuant to 11 U.S.C. § 363(b) for abuse of discretion. *See In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir.1983); *Big Shanty Land Corp. v. Comer Properties, Inc.,* 61 B.R. 272, 277 (N.D.Ga.1985). A reviewing court cannot reverse for abuse of discretion unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Barona Group of the Capitan Grande Band of Mission Indians v. Amer. Mgmt. & Amusement, Inc.,* 824 F.2d 710, 724 modified 840 F.2d 1394, 1408 (9th Cir. 1987).

It is not the propriety of the sale, but the disposition of the sale proceeds which is at issue in this case. We conclude that the bankruptcy court abused its discretion because the order allowing the distribution of the sale proceeds allows the debtor to circumvent the provisions of the Bankruptcy Code for the administration of a case under Chapter 11.

In fairness to the bankruptcy court, the case was not presented in such a fashion as to make Rosenberg's objections to the disposition of the sale proceeds entirely clear. Nonetheless, that does not appear to be Rosenberg's fault. He objected to the proposed distribution of the proceeds of the sale, whether to the State of California or to the IRS, on the grounds that to so distribute the proceeds would result in unsecured tax claims, seventh priority claims under 11 U.S.C. § 507(a)(7), being paid ahead of Rosenberg's claim for post-petition rent, a first priority claim under 11 U.S.C. § 507(a)(1). This contention was based upon the mistaken assumption that the IRS had an unsecured claim. However,

Rosenberg cannot be faulted for this lapse. The IRS concedes that there was no evidence at the hearing on the application to sell the property that the IRS was a secured claimant. Although information concerning the IRS lien was embodied in the stipulated order for use of cash collateral entered into between the debtor and the IRS, the stipulated order was entered without notice and a hearing.

Rosenberg informed the court that it believed that the case should be converted from a Chapter 11 to a Chapter 7, and that it intended to so move. If that were to happen, then Rosenberg's claim for post-petition rent, as an administrative claim, would have priority over the IRS lien for pre-petition taxes, even if it were secured, pursuant to 11 U.S.C. § 724(b). While this objection was based on a hypothetical event, nevertheless, all concerned were apprised of Rosenberg's administrative claim which was not prejudiced by virtue of the *ex parte* cash collateral order.

We conclude that Rosenberg adequately presented to the bankruptcy court its objections to a distribution of the sale regardless of whether it was in payment of pre-petition taxes or post-petition taxes.

■ The general rule is that a distribution on pre-petition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances. *In re Conroe Forge & Mfg. Corp.,* 82 B.R. 781, 784 (Bankr.W.D.Pa.1988). *See* 11 U.S.C. § 1123(a)(5) (plan must provide adequate means for implementation); Bankruptcy Rule 3021 (distribution shall be made to creditors whose claims have been allowed after confirmation of a plan.) The Code also provides for the sale of property of the estate other than in the ordinary course of business. 11 U.S.C. § 363(b)(1). When a sale of all or substantial assets of the estate is proposed in a Chapter 11 case under the aegis of § 363(b)(1), there is the potential for circumventing the requirements attendant to the confirmation of a Chapter 11 plan. *See In re Lionel Corp.,* 722 F.2d 1063, 1066 (2d Cir.1983); *Conroe,* 82 B.R.

at 785. To date, most of the cases addressing the problems arising when a sale or other transaction involving substantial assets of a Chapter 11 estate is proposed outside the confines of a plan have arisen in the context of approval of the transaction itself. *See In re Continental Air Lines, Inc.,* 780 F.2d 1223 (5th Cir.1986); *Lionel,* 722 F.2d 1063; *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983).

In this case, Rosenberg is not contesting the sale, but the distribution of the proceeds. However, the court in *Conroe* applied the principles of *Lionel* and *Braniff* to the distribution of the proceeds of a sale of an asset encumbered by a lien. We find that the *Conroe* approach strikes the proper balance between the power to sell assets of the estate other than in the ordinary course of business and the requirements of Chapter 11.

In *Conroe,* the Chapter 11 debtor sought authorization to sell a piece of machinery free and clear of liens. Mellon Bank, the secured creditor, requested that it immediately receive the proceeds of the sale. The Bank held a security interest in the debtor's land, buildings, and machinery, and was owed in excess of $2,000,000. The sales price of the machinery was $149,000. Citing 11 U.S.C. § 361(1) and (3), the Bank argued that in order to adequately protect its interest, the court must authorize immediate payment to the Bank of the net proceeds of the sale, despite the fact that the motion to sell free and clear of liens provided for the transfer of liens to the proceeds of the sale. The Bank simply argued that it would benefit more from immediate payment.

The court in *Conroe* was not persuaded. As in the instant case, the debtor had proposed a liquidating plan of reorganization pursuant to 11 U.S.C. § 1123(b)(4).[1] Section 1123(b)(4) enables a debtor to structure a liquidation through a plan, and states that a plan may provide for the sale of all or substantially all of the assets of the estate and the distribution of the proceeds. In *Conroe,* the court gave primary consideration to whether the property at issue, the proceeds of the sale, was necessary for an effective reorganization. In a liquidating Chapter 11 where the debtor has ceased operations and the value of the collateral is not decreasing, ordinarily all property will be necessary for an effective reorganization.[2] *Conroe,* 82 B.R. at 785. "Necessary" property is that which will contribute to a plan of reorganization. *Id.* If circumstances require confirmation of a sale before a liquidating plan has been confirmed, the proceeds, which will be earning interest, are necessary to the plan which presumably will provide for the sale of the rest of the debtor's assets and the distribution of the proceeds. If distribution of assets occurs before confirmation, there will exist no means by which a plan may be implemented, in contravention of 11 U.S.C. § 1123(a)(5). In addition, if distribution is made to creditors in a liquidating Chapter 11 before confirmation of a plan, there will be little incentive for parties in interest to prosecute the case in an expeditious manner, much less to perform the work required to issue and obtain approval of a disclosure statement and plan. *Id.*

The court in *Conroe,* relying in part on case law under Chapter XI of the Bankruptcy Act to the effect that a sale of assets before confirmation of a plan is permissible only on the basis of a demonstrated emergency, concluded that if the sale itself was permissible only in the most exigent of circumstances, then distribution of the proceeds would require, at a minimum, a showing of similar immediate need.[3] *Conroe,* 82 B.R. at 786. That the creditor could receive a better return through immediate payment did not mean that it was

---

1. At oral argument, counsel for Air Beds, Inc. informed the Panel that a liquidating plan of reorganization has been filed in this case.

2. It is not apparent from the record before us that the value of the property was decreasing.

3. In *Lionel,* 722 F.2d at 1071, upon which the court in *Conroe* relied in part, the Court of Appeals adopted the rule that the bankruptcy court, in reviewing an application under 11 U.S.C. § 363(b), expressly find from the evidence before it that a good business reason exists to grant the application.

not adequately protected by substitution of liens to proceeds.

■ We need not articulate a rule governing the circumstances under which substantial assets of a Chapter 11 estate may be sold pursuant to 11 U.S.C. § 363(b)(1); the issue before us is the propriety of the distribution of the sale proceeds in this case. We conclude that under the circumstances, the trial court abused its discretion in ordering the distribution of the proceeds to pay tax claims. As noted earlier, it is not entirely clear exactly what the court ordered—whether payment of pre-petition or post-petition taxes, or payment solely to the IRS or to the California State Employment Development Department as well.[4] Regardless of the taxing authority, and regardless of whether the payment was for pre-petition or post-petition taxes, the court's order would allow the debtor to circumvent the provisions of Chapter 11 with respect to proposal, disclosure, and confirmation of a plan.

It is our empirical observation that many more plans of reorganization are contemplated than are proposed; fewer still are confirmed; and even fewer are consummated. A Chapter 11 case may be converted to a Chapter 7 or dismissed for reasons which include inability to effectuate a plan (11 U.S.C. § 1112(b)(1)); denial of confirmation of every proposed plan (11 U.S.C. § 1112(b)(5)); and inability to effectuate substantial consummation of a confirmed plan (11 U.S.C. § 1112(b)(7)). There is no showing why the retention of the proceeds by the debtor in possession, in its capacity as trustee, with a lien attaching to the funds, would not protect the IRS pending confirmation of a plan and a distribution under the plan as contemplated by the Bankruptcy Code.

The IRS contends that Rosenberg's appeal is merely academic; even if the case were to be converted to a Chapter 7, and its pre-petition tax liens were to be subordinated to Rosenberg's claim, the liens would nonetheless have "superpriority" under 11 U.S.C. § 507(b).[5] We find this argument unpersuasive. The purpose of section 507(b) is to fund claims arising from the inadequacy of adequate protection to fully compensate a secured creditor for erosion in the value of its property interest during the course of a bankruptcy case. *In re Callister,* 15 B.R. 521, 528 (Bankr.D.Utah 1981), *appeal dismissed,* 673 F.2d 305 (10th Cir.1982) appeal later *aff'd sub nom. Ingersol–Rand Fin. Corp. v. Callister (In re Callister),* 13 Bankr.Ct. Dec. 21 (CRR) (10th Cir. Apr. 16, 1984). The superpriority, because of its equitable underpinnings, is in large measure fact-specific. *Id.* However, the prognosis is that if this case were converted to a Chapter 7, the tax liens would *not* be entitled to a superpriority under section 507(b) because the failure of the stipulated adequate protection would be the result of a decline in the value of the collateral not attributable to the automatic stay, but to the operation of law, *viz,* 11 U.S.C. § 724(b).

B. Was the bankruptcy court's finding that the patent was not property of the estate clearly erroneous?

■ The application for an order approving the sale advised the court that the president of the debtor corporation was selling his patent rights in a certain patent for $15,000. Rosenberg challenges the bankruptcy court's finding that the patent, the sale of which was included in the sale which was approved by the court, was not property of the estate and its declaration

**4.** For the sake of argument, and because the California State Employment Development Department is not a party to this appeal, we will assume that the debtor intends to pay the IRS.

**5.** 11 U.S.C. § 507(b) provides:
If the trustee, under section 362, 363, 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a

claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

that the debtor has no interest in the proceeds of the sale of the patent. The order contains a declaration that the debtor has no interest in the proceeds of the sale of the patent. We review findings of fact for clear error. Bankruptcy Rule 8013; *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985). There was no evidence presented that the debtor's president, rather than the debtor owned the patent. There was also no evidence that the debtor owned the patent. Therefore, the finding of the bankruptcy court that the debtor has no interest in the proceeds of the sale of the patent is not supported by any evidence and this matter should be remanded for the taking of testimony relative to ownership of the patent.

## CONCLUSION

Those portions of the order of the bankruptcy court which address the distribution of the proceeds of the sale and the ownership of the patent are reversed and remanded for further proceedings consistent with this opinion.