# United States Court of Appeals
# for the Federal Circuit

---

**MOJAVE DESERT HOLDINGS, LLC,**
*Appellant*

**v.**

**CROCS, INC.,**
*Appellee*

---

2020-1167

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 95/002,100.

---

## ON MOTION

---

MATT BERKOWITZ, Shearman & Sterling LLP, Menlo Park, CA, argued for appellant. Also represented by YUE WANG; PATRICK ROBERT COLSHER, MARK A. HANNEMANN, THOMAS R. MAKIN, New York, NY; LAURA KIERAN KIECKHEFER, San Francisco, CA.

MICHAEL BERTA, Arnold & Porter Kaye Scholer LLP, San Francisco, CA, argued for appellee. Also represented by SEAN MICHAEL CALLAGY; MARK CHRISTOPHER FLEMING, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA; BENJAMIN S. FERNANDEZ, Denver, CO.

---

Before NEWMAN, DYK, and O'MALLEY, *Circuit Judges.*

DYK, *Circuit Judge.*

## O R D E R

U.S.A. Dawgs, Inc. appeals from a United States Patent and Trademark Office (USPTO) decision finding Crocs, Inc.'s design patent (No. D517,789) patentable. U.S.A. Dawgs and Mojave Desert Holdings, LLC move to substitute Mojave as U.S.A. Dawgs's successor-in-interest. For the reasons stated below, we grant U.S.A. Dawgs and Mojave's motion to substitute.

BACKGROUND

Crocs, Inc. is the owner of U.S. Design Patent No. D517,789 ("the '789 patent"), titled "Footwear," which includes a single claim for the "ornamental design for footwear" and seven figures illustrating the claim. According to Crocs, the '789 patent "discloses what has become [its] iconic foam-molded clog design." J.A. 1698.

On August 6, 2012, Crocs sued U.S.A. Dawgs, Inc. for infringement of the '789 patent in the United States District Court for the District of Colorado based on U.S.A. Dawgs's manufacture and sale of its own form of foam-molded clog footwear. Shortly after Crocs filed, on August 24, 2012, U.S.A. Dawgs filed a third-party request for inter partes reexamination of the '789 patent at the USPTO under 35 U.S.C. § 311.[1] The USPTO ordered the reexamination on November 19, 2012. The district court stayed the proceedings in light of the inter partes reexamination. The examiner rejected the claim as anticipated under 35 U.S.C.

---

[1]    All statutory provisions from Title 35 cited in this Order are to the statutes prior to the passage of the Leahy-Smith America Invents Act, 125 Stat. 284 (2011).

§ 102(b).  Crocs appealed to the Patent Trial and Appeal Board.

While the appeal was pending before the Board, on January 31, 2018, U.S.A. Dawgs filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Nevada, where U.S.A. Dawgs is incorporated.  In May, U.S.A. Dawgs moved for the bankruptcy court to approve the sale of all of its assets to a recently formed entity, Dawgs Holdings, LLC, "free and clear of all liens, claims, and encumbrances subject to 11 U.S.C. § 363(b) and (f)."[2]

On July 20, 2018, the bankruptcy court approved the sale of U.S.A. Dawgs's assets to Dawgs Holdings pursuant to the terms and conditions of an Asset Purchase Agreement.  The Asset Purchase Agreement assigned Dawgs Holdings

> [a]ll of [U.S.A. Dawgs's] right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including intellectual property and goodwill), of [U.S.A. Dawgs], wherever located and whether now existing or hereafter acquired, owned, leased, licensed or used or held for use in or relating to the operation of [U.S.A. Dawgs's] business as of the Closing Date.

J.A. 3217.  In its order approving the sale, the bankruptcy court stated that

> the Sale [was] not free and clear of any Claims Crocs, Inc. . . . may hold for patent infringement occurring post-Closing Date by any person including the Prevailing Bidder, or any defenses Crocs may

---

[2]    Mot. at 6, *In re U.S.A. Dawgs*, No. 18-bk-10453 (Bankr. D. Nev. May 25, 2018), ECF No. 314.

> have in respect of any litigation claims that are sold pursuant to the Sale, including any rights to setoff or recoupment against such claims to the extent validly existing under applicable law (together, the "Retained Rights") and the Retained Rights are preserved in all respects.

J.A. 3175 (footnote omitted).

U.S.A. Dawgs moved to distribute the net proceeds from the sale of its assets and to dismiss its Chapter 11 bankruptcy case.[3]  On August 21, 2018, the bankruptcy court granted U.S.A. Dawgs's motion, authorizing the distribution of the net sale proceeds and dismissing U.S.A. Dawgs's Chapter 11 bankruptcy case.

Thereafter, on August 15, 2018, Dawgs Holdings assigned all rights, including explicitly the claims asserted by U.S.A. Dawgs in the District of Colorado action and the inter partes reexamination, to Mojave.  On October 23, 2018, U.S.A. Dawgs dissolved but continued to exist for limited purposes, including "prosecuting and defending suits, actions, proceedings and claims of any kind or character by

---

[3]    "The general rule is that a distribution on pre-petition debt in a Chapter 11 plan should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances." *Rosenberg Real Estate Equity Fund III v. Air Beds, Inc.* (*In re Air Beds, Inc.*), 92 B.R. 419, 422 (Bankr. 9th Cir. 1988).  There is, however, an exception to the general rule, which permits a bankruptcy court to approve a "structured dismissal" in appropriate circumstances, as U.S.A. Dawgs requested here.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978–82, 985 (2017) (discussing structured dismissals but expressing no views as to their legality in general); *see also* 11 U.S.C. § 1112(b)(1).

or against it" and "enabling it . . . to do every other act to wind up and liquidate its business and affairs." Nev. Rev. Stat. § 78.585.

Months later, on July 18, 2019, Mojave filed a petition with the Board titled, "Request to Change the Real-Party-in-Interest from Third-Party Requestor U.S.A. Dawgs, Inc. to Mojave Desert Holding, LLC in Inter Partes Reexamination/Hearing." J.A. 3100. The Board expunged and dismissed Mojave's request on August 19, 2019, on various grounds. First, the Board found that Mojave's

> submissions [were] insufficient to establish Mojave as a real party[-]in[-]interest and/or Requester in the instant *inter partes* reexamination proceeding, because the initial transfer of assets from U.S.A. Dawgs, Inc. to U.S.A. Dawgs Holdings, LLC . . . appears to be silent about any rights with regard to the instant inter partes reexamination proceeding.

J.A. 176 (citing *Agilent Techs., Inc. v. Waters Techs. Corp.*, 811 F.3d 1326, 1334 (Fed. Cir. 2016)).

Second, based on its interpretation of the transfer of assets, the Board rejected Mojave's filing because Mojave was "not a party to the instant *inter partes* reexamination proceeding" and did "not have standing to update the real party-in-interest in the proceeding pursuant to [37 C.F.R.] § 41.8(a)." J.A. 180. And third, the Board concluded that Mojave did not file its submission "within 20 days of any change [of the real party-in-interest] during the proceeding," as required by 37 C.F.R. § 41.8(a), making it untimely. J.A. 180.

The first and second grounds appear to be the same. Based on these grounds, the Board considered Mojave's

petition an "improper submission" under 37 C.F.R. § 1.905[4] and expunged it from the record and dismissed it as well. J.A. 173–74, 181–82.

On September 10, 2019, the Board issued its decision reversing the examiner's rejection of the '789 patent's sole claim. U.S.A. Dawgs appealed to this court. In its Notice of Appeal, U.S.A. Dawgs stated that Mojave "intend[ed] to file a motion for substitution of parties" with the court "pursuant to Federal Rule of Appellate Procedure 43(b)." Notice of Appeal at 1 n.1, ECF No. 1. On December 13, 2019, U.S.A. Dawgs and Mojave filed the motion to substitute.

---

[4]    37 C.F.R. § 1.905 states,

Unless specifically provided for, no submission on behalf of any third parties other than third party requesters as defined in 35 U.S.C. [§] 100(e) will be considered unless such submissions are in accordance with § 1.915 [governing the content of requests for inter partes reexaminations] or entered in the patent file prior to the date of the order for reexamination pursuant to § 1.931 [governing the order for inter partes reexamination]. Submissions by third parties, other than third party requesters, filed after the date of the order for reexamination pursuant to § 1.931, must meet the requirements of § 1.501 [governing the citation of prior art and written statements in patent files] and will be treated in accordance with § 1.902 [governing the processing of prior art citations during inter partes reexamination proceedings]. Submissions which do not meet the requirements of § 1.501 will be returned.

We now address U.S.A. Dawgs and Mojave's motion to substitute.    We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

### DISCUSSION

The motion to substitute is made pursuant to Rule 43(b) of the Federal Rules of Appellate Procedure, which provides that, "[i]f a party needs to be substituted for any reason other than death, the procedure prescribed in Rule 43(a) applies."  Fed. R. App. P. 43(b).[5]

> Substitution [under Rule 43(b)] may . . . be necessary when a party is incapable of continuing the suit, such as . . . when a transfer of interest in the company or property involved in the suit has occurred[] or when the focus of the litigation has shifted, making another entity the real party in interest.

21 James W. Moore et al., *Moore's Federal Practice – Civil* § 343.12 (2020).

---

[5]    Rule 43(a) provides in pertinent part:

(a) Death of a Party.

   . . .

   (2) Before Notice of Appeal Is Filed—Potential Appellant.  If a party entitled to appeal dies before filing a notice of appeal, the decedent's personal representative—or, if there is no personal representative, the decedent's attorney of record—may file a notice of appeal within the time prescribed by these rules.  After the notice of appeal is filed, substitution must be in accordance with Rule 43(a)(1).

Fed. R. App. P. 43(a)(2).

Crocs asserts that U.S.A. Dawgs and Mojave's motion to substitute should be denied for several reasons. We disagree.

I

Crocs argues that the Board correctly determined that Mojave is not the successor-in-interest to U.S.A. Dawgs with respect to the inter partes reexamination because the bankruptcy sale did not transfer U.S.A. Dawgs's interest as a requester to Dawgs Holdings.

U.S.A. Dawgs assigned all of its assets to Dawgs Holdings through the bankruptcy sale. This assignment was comprehensive and was described as

> [a]ll of [U.S.A. Dawgs's] right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including intellectual property and goodwill), of [U.S.A. Dawgs], wherever located and whether now existing or hereafter acquired, owned, leased, licensed or used or held for use in or relating to the operation of [U.S.A. Dawgs's] business as of the Closing Date.

J.A. 3217.

Crocs argues that this case is just like *Agilent Technologies, Inc. v. Waters Technologies Corp.*, 811 F.3d 1326 (Fed. Cir. 2016). In that case, Agilent claimed to be the successor-in-interest to Aurora, a company that filed a request for inter partes reexamination. *Id.* at 1332. According to Agilent, it acquired "substantially all" of the assets of Aurora. *Id.* But Aurora continued as an operating entity and continued to participate before the Board. *Id.* at 1332–33. Noting that "'substantially all' does not mean 'all,'" we held that it was unclear whether Agilent was Aurora's successor-in-interest because the court "d[id] not

know precisely what was transferred" in the assignments. *Id.* at 1332.

Here, all of U.S.A. Dawgs's interests were included as property of its estate when it filed for bankruptcy. *See* 5 *Collier on Bankruptcy* ¶ 541.07 (16th ed. 2020) ("The [Bankruptcy] Code provides that *all* interests of the debtor in rights of action be included as property of the estate under [11 U.S.C. §] 541(a)(1)."). In contrast to *Agilent*, the first sale from U.S.A. Dawgs to Dawgs Holdings clearly transferred all of U.S.A. Dawgs's assets and claims and did so using broad language. U.S.A. Dawgs did not need to enumerate each of its assets individually to effectuate the broad transfer. U.S.A. Dawgs dissolved and did not continue to participate before the Board. Under the circumstances, the transfer of all assets on its face included the rights in the Board proceeding.

The second sale similarly assigned Mojave all of Dawgs Holdings's assets and claims and, for clarity, specifically enumerated its interest as the requester in the inter partes reexamination. The reassignment provided

> [t]hat for good and valuable consideration, . . . [Dawgs Holdings], by these presents does hereby sell, grant, and convey unto [Mojave] . . . all of [Dawgs Holdings's] right, title and interest in and to all of the Acquired Assets . . . , which, for the avoidance of doubt, is intended to and does include all rights of [Dawgs Holdings] in any post-grant proceeding before the U.S. Patent and Trademark Office concerning any of the patents at issue . . . , including without limitation, inter partes reexamination control no. 95/002,100.

J.A. 3267. As these assignments make clear, Mojave is the successor-in-interest of U.S.A. Dawgs.

10          MOJAVE DESERT HOLDINGS, LLC v. CROCS, INC.

II

In a single sentence in its appeal brief, Crocs argues that, even if Mojave is a successor-in-interest to U.S.A. Dawgs, Mojave did not seek substitution before the Board for nearly a year after it acquired U.S.A. Dawgs's interest in the inter partes reexamination and that the Board properly denied substitution on this ground under 37 C.F.R. § 41.8(a). Crocs does not assert that it argued this before the Board.

37 C.F.R. § 41.8(a) provides:

In an appeal brief . . . or at the initiation of a contested case . . . , and within 20 days of any change during the proceeding, a party must identify:

(1) Its real party-in-interest, and

(2) Each judicial or administrative proceeding that could affect, or be affected by, the Board proceeding.

We do not read 37 C.F.R. § 41.8(a) as permitting the Board to ignore a transfer of interest in an inter partes reexamination that has been assigned to a successor-in-interest. The purpose of the rule is to detect conflicts of interest and to enable enforcement of inter partes reexamination estoppel provisions.[6] The rule is not

---

[6]    MPEP § 1205.02 (9th ed. Rev. 10 2020) ("The identification of the real party in interest allows members of the Board to comply with ethics regulations associated with working in matters in which the member has a financial interest to avoid any potential conflict of interest."); MPEP § 2612 (8th ed. Rev. 7 2008) (noting that "it is the real party in interest that is subject to the estoppel provisions"); *id.* § 2686.04 (explaining the USPTO's procedures to enforce the inter partes reexamination estoppel provisions); *see*

directly related to substitution. Notably, in the federal district courts, there is no time limit attached to a party moving for substitution on the basis of a transfer in interest. *See* Fed. R. Civ. P. 25(c) ("If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."). As Wright and Miller observe, "[s]ince Rule 25(c) is wholly permissive there is no time limit on moving to substitute under its provisions." 7C Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 1958 (3d ed. 2020). In line with this view, the Board has permitted parties to continue appeals after a change in the real party-in-interest despite the parties not filing the notices as required by 37 C.F.R. § 41.8.[7]

If the Board were permitted to preclude substitution on the basis of a transfer in interest because of a late filing, this would defeat the important interest in having the proper party before the Board. The Board erred by not

---

*also* 145 Cong. Rec. 26, 984 (1999) (statement of Sen. Hatch) (noting that the inter partes reexamination statute includes provisions intended to "prevent abusive reexamination requests, including broad estoppel provisions").

[7]    *See, e.g.*, *Ex parte Young*, No. 2014-2951, 2016 Pat. App. LEXIS 2112, at *1 n.1 (P.T.A.B. May 17, 2016) (permitting a party to continue with an appeal of an ex parte patent application under 37 C.F.R. § 41.8 despite not filing a notice of a change to the real party-in-interest within twenty days of a merger with another company but "remind[ing]" the party of its ongoing duty to do so); *Ex parte Bandholz*, No. 2014-2942, 2016 Pat. App. LEXIS 5083, at *1 n.1 (P.T.A.B. May 10, 2016) (permitting the same after assignment of the patent application to a new corporation).

substituting Mojave as the third-party requester while the inter partes reexamination was pending before the Board.[8]

### III

Crocs additionally argues that the interest of a requester cannot be assigned under the statute governing appeals from inter partes reexamination.

The right of a third-party requester to appeal to this court comes from 35 U.S.C. § 141, which states:

> A patent owner, or a third-party requester in an inter partes reexamination proceeding, who is in any reexamination proceeding dissatisfied with the final decision in an appeal to the Board . . . under section 134 may appeal the decision only to the

---

[8]    We note that, in district court proceedings, a transfer of interest that occurs after the initiation of a lawsuit may cause the court to lose jurisdiction unless the jurisdictional defect caused by the transfer of the original party's interest is cured prior to the entry of final judgment. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203–04 & 1204 n.6 (Fed. Cir. 2005) (noting but not deciding the issue).

Here, the transfer of U.S.A. Dawgs's assets took place while the inter partes reexamination was pending before the Board at the USPTO, and substitution did not occur before the Board's final decision. Unlike cases before a federal court, however, Article III standing is not necessary at the USPTO. *Consumer Watchdog*, 753 F.3d at 1261. As a result, the transfer of interest occurring before the Board had no effect on the Board's authority to decide the case. Crocs makes no argument that the timing of the transfer prevented the Board from deciding the case.

United States Court of Appeals for the Federal Circuit.

We have previously concluded that the statutory structure prohibits "mere privies" from appealing a reexamination because, under the statutory structure, "mere privies lack a cause of action." *Agilent*, 811 F.3d at 1331. And we also observed that, "[w]hile the language of the statute does not explicitly forbid a change in the identity of the third-party requester over the course of the proceeding or on appeal, . . . it similarly does not appear to address whether and under what circumstances a change in the identity of the third-party requester can occur." *Id.* at 1332. We reserved the question whether the statute permitted substitution. *Id.* at 1332, 1334.

The Supreme Court's decision in *Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269 (2008), recognizes that, at common law, choses in action were generally assignable and appears to hold that this general rule is applicable to federal causes of action. As the Court explained, "history and precedents . . . make clear that courts have long found ways to allow assignees to bring suit." *Id.* at 285 (holding that a federal cause of action that permitted payphone operators to seek compensation from long-distance carriers for certain calls was assignable); *Spiller v. Atchison, T. & S.F. Ry. Co.*, 253 U.S. 117, 133–36 (1920) (permitting assignment of federal causes of action for reparation orders made by the Interstate Commerce Commission "in the absence of any expression of a legislative intent to the contrary"); *see also John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 416–17 (2d Cir. 2018) (Parker, J., dissenting) (collecting cases). This rule applies even when the statute in question provides for suit by the transferor. *See Spiller*, 253 U.S. at 133–36.

To be sure, there are exceptions. In *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24 (1923), the

Supreme Court held that the assignment of the right to sue for past patent infringement, by itself, does not give the assignee the right to bring suit without joining the patent owner. *Id.* at 39–41; *see also Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1233–34 (Fed. Cir. 2019) (recognizing that patentees cannot award a "hunting license" to third parties); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) (same). And the Second Circuit has held that the right to sue for copyright infringement cannot be assigned separately from the copyright owner's exclusive rights. *Wiley & Sons*, 882 F.3d at 410.

Both lines of cases rely on the policy against separating the right to exclude from the right to sue for infringement. Here, it may well be that the right of the requester to appeal cannot be separated from the requester's potential liability for infringement. But we are aware of no case that suggests that a federal claim is lost when it is transferred together with the assignor's entire business. Where, as here, the requester's right has been transferred together with all other assets, there is no reason that the requester's right to challenge the Board's decision cannot be effectively transferred. To refuse to recognize such a transfer where the other assets remain subject to infringement liability would create a situation in which the assets remained potentially liable for infringement, but the transferee would have lost the right to challenge patent validity. Crocs points to nothing in the statutory structure or legislative history of the inter partes reexamination statute that suggests that the general rule regarding the assignment of causes of action should not apply to this situation, and we similarly are aware of none. We hold that, under the statute, the requester's right (including its right to appeal) may be transferred at least when it occurs as part of the transfer of the requester's entire business or assets.

*Vaillancourt v. Becton Dickinson & Co.*, 749 F.3d 1368 (Fed. Cir. 2014), is not to the contrary. In *Vaillancourt*, the individual owner of a patent transferred his interest in the patent to a corporation while an inter partes reexamination was pending before the Board. *Id.* at 1369. The Board affirmed the examiner's rejection, and the individual filed a notice of appeal to this court. *Id.* We concluded that the individual could not bring the appeal because the new corporation was "indisputably the owner of the . . . patent, and held all right, title, and interest to the patent when [the individual] filed the notice of appeal with this court." *Id.* at 1370. The court considered no issue of substitution because substitution had not been requested either before the Board or on appeal. *Vaillancourt* is inapplicable.

## IV

Crocs argues that, even if Mojave is the successor-in-interest to U.S.A. Dawgs, Mojave lacks standing because it does not face a potential suit for infringement. Again, we disagree.

Article III of the Constitution limits the judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). It is well established that "the irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

"These constitutional requirements for standing apply on appeal" and "apply with equal force to appeals from administrative agencies, such as the [USPTO], to the federal

courts." *Consumer Watchdog v. Wis. Alumni Rsch. Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) (citations omitted). To establish an Article III injury on appeal from an inter partes reexamination, we have previously held that it is sufficient for an appellant to show that it has engaged in "activity that would give rise to a possible infringement suit." *Id.* at 1262.

Mojave has standing as U.S.A. Dawgs's successor-in-interest. The sale agreement approved by the bankruptcy court specifically provided that the transferred assets "[were] not free and clear of any Claims Crocs, Inc. . . . may hold for patent infringement occurring post-Closing Date by any person including the Prevailing Bidder." J.A. 3175. The acquired assets thus face potential patent infringement claims. Moreover, Mojave also could face potential patent infringement liability because of activities after the bankruptcy sale relating to the sale of acquired inventory that is alleged to infringe.[9]

Mojave also meets the other two requirements of standing. Mojave's injury is traceable to the challenged '789 patent, which has been asserted by Crocs in the District of Colorado litigation, and would be redressed by a favorable ruling in this court that reversed the Board's finding of patentability of the '789 patent.

---

[9] Mojave may also suffer an Article III injury as a result of the false advertising counterclaims in the District of Colorado litigation that it acquired from U.S.A. Dawgs. Mojave acquired U.S.A. Dawgs's false advertising counterclaims subject to "any rights to setoff or recoupment" by Crocs. J.A. 3175. Thus, Crocs's infringement claim, if successful, may reduce Crocs's liability on Mojave's false advertising claim.

## V

Crocs also argues that Mojave failed to file a notice of appeal from the Board's decision. Mojave could not file a notice of appeal because it had not been added as a party by the Board to the inter partes reexamination proceeding. Under Nevada law, however, U.S.A. Dawgs retained the ability to file a protective notice of appeal,[10] and did so on November 8, 2019. That was sufficient to confer jurisdiction on this court. Other courts have apparently reached similar conclusions. *See, e.g.*, *Barger v. City of Cartersville*, 348 F.3d 1289, 1291–93 (11th Cir. 2003) (determining that the notice of appeal filed by transferor was sufficient), *overruled on other grounds by Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017); *ELCA Enters., Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 190–91 (8th Cir. 1995) (permitting party denied substitution before the district court to appeal despite transferring all interest in lawsuit).

*    *    *

We therefore conclude that Mojave is the successor-in-interest to U.S.A. Dawgs, that it has standing to pursue this challenge to the '789 patent, and that the Board erred in not substituting Mojave for U.S.A. Dawgs as the third-party requester during the inter partes reexamination.

Under these circumstances, we think that no useful purpose would be served by remanding to the Board to add

---

[10]    Nevada law permits U.S.A. Dawgs to "continue[] as a body corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually . . . to wind up and liquidate its business and affairs, but not for the purpose of continuing the business for which it was established." Nev. Rev. Stat. § 78.585.

Mojave as the requester and that the appropriate course is to grant the motion to substitute on appeal pursuant to Rule 43(b) of the Federal Rules of Appellate Procedure. *See Mullaney v. Anderson*, 342 U.S. 415, 417 (1952);[11] *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 833–34 (1989) (reaffirming *Mullaney*); *Carlton v. Baww, Inc.*, 751 F.2d 781, 789 (5th Cir. 1985) (permitting amendment to a pleading at the appellate court because "it appear[ed] plainly from [the] record that jurisdiction exists," and as a result, "it best serve[d] the interests of justice to grant the motion for leave to amend [in the appellate court], without requiring a perfunctory remand for that purpose" (citations omitted)).

Accordingly,

IT IS ORDERED THAT:

(1)  The motion to substitute is granted.

(2)  The revised official caption is reflected above.

---

[11]  In *Mullaney*, while on review in the Supreme Court, the Court added a plaintiff to the litigation under Federal Rule of Civil Procedure 21 without requiring the new plaintiff to return to the district court because of the "special circumstances" before the Court, including that returning to the district court "would entail needless waste and runs counter to the effective judicial administration," that changing the parties would not have "affected the course of the litigation" if it had occurred at some earlier point, and that amending the parties in this way would "rarely come into play" at such a late stage in litigation. 342 U.S. at 417.

FOR THE COURT

<u>February 11, 2021</u>　　　　/s/ Peter R. Marksteiner
Date　　　　　　　　　Peter R. Marksteiner
　　　　　　　　　　　Clerk of Court